## IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON
_____

<table>
<tr><td>ROY ROSE,</td><td>)</td><td>Tipton County Circuit Court</td></tr>
<tr><td></td><td>)</td><td>No. 3745</td></tr>
<tr><td>Plaintiff/Appellant.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>VS.</td><td>)</td><td>C. A. NO. 02A01-9608-CV-00189</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>TIPTON COUNTY PUBLIC WORKS</td><td>)</td><td></td></tr>
<tr><td>DEPARTMENT, JEFF HUFFMAN,</td><td>)</td><td></td></tr>
<tr><td>COUNTY EXECUTIVE, CURRIE</td><td>)</td><td></td></tr>
<tr><td>ERWIN, JAMES HARKNESS,</td><td>)</td><td></td></tr>
<tr><td>JOHN McINTYRE, JAMES OSBURN,</td><td>)</td><td></td></tr>
<tr><td>SHELBY ROSE, HAROLD TWISDALE,</td><td>)</td><td></td></tr>
<tr><td>CLIFFORD WILSON,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendants/Appellees.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

**FILED**

**April 18, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

From the Circuit Court of Tipton County at Covington.
**Honorable Joseph H. Walker, Judge**


**Frank Deslauriers**, Covington, Tennessee
Attorney for Plaintiff/Appellant.


**James L. Holt, Jr.,**
JACKSON, SHIELDS, YEISER & CANTRELL, Cordova, Tennessee
**Duke H. Brasfield**, Covington, Tennessee
Attorneys for Defendants/Appellees.


OPINION FILED:

**AFFIRMED AND REMANDED**


**FARMER, J.**


**CRAWFORD, P.J., W.S.**: (Concurs)
**LILLARD, J.**: (Concurs)

In this action for breach of an employment contract, Plaintiff Roy Rose appeals the trial court's order entering summary judgment in favor of Defendants/Appellees Tipton County Public Works Department, County Executive Jeff Huffman, and individual members of the Tipton County Public Works Department Committee. The trial court granted the Defendants' motion for summary judgment based on the court's conclusion that an employee handbook distributed by the Public Works Department in 1982, and revised in 1988, did not constitute an employment contract. We affirm.

Rose began working for the Public Works Department in 1979. At the time he was hired, Rose signed a statement acknowledging that his employment was "for no definite period" and that he could "be terminated at any time without any prior notice." In 1982, the Department promulgated an employee handbook. The Department revised its employee handbook in 1988. The current version of the handbook sets forth a progressive system of discipline which categorizes offenses into Class I and Class II offenses and describes the disciplinary action which will result from violations of each category of offenses. For Class I offenses, the first violation results in suspension without pay for a period of up to thirty days, and the second violation results in automatic termination. For Class II offenses, the first violation results in a written reprimand; the second violation results in suspension without pay; and the third violation results in dismissal, provided the three violations occurred within a one-year period.[1]

In August 1991, the Director of Public Works terminated Rose for insubordination. It was undisputed that, in terminating Rose, the Director did not follow the progressive system of discipline set forth in the Department's employee handbook. The handbook categorizes insubordination as a Class II offense, and this was Rose's first violation.

After the Public Works Department Committee upheld Rose's termination, Rose filed this lawsuit for breach of employment contract.[2] The Defendants subsequently moved for summary

---

[1] If the three violations did not occur within a one-year period, "then the discipline drops back one step."

[2] In his complaint, Rose also asserted a claim for retaliatory discharge. *See* T.C.A. § 50-1-304 (1991). On appeal, however, no issue has been raised regarding the trial court's dismissal of this claim.

judgment, contending that Rose's action should be dismissed because the employee handbook distributed by the Public Works Department, as a matter of law, did not constitute a contract. Based on this argument, the trial court granted the Defendants' motion and dismissed Rose's complaint.

For purposes of these summary judgment proceedings, Rose appears to concede that his actions resulting in his termination constituted insubordination.[3] On appeal, however, Rose contends that the Public Works Department was in breach of contract when it terminated Rose because the Department failed to follow the progressive system of discipline set forth in its employee handbook. This appeal, therefore, requires us to determine whether the employee handbook distributed by the Department constituted an employment contract.[4]

We begin our analysis of this issue with the well-established rule "that a contract for employment for an indefinite term is a contract at will and can be terminated by either party at any time without cause." *Bringle v. Methodist Hosp.*, 701 S.W.2d 622, 625 (Tenn. App. 1985); *accord Graves v. Anchor Wire Corp.*, 692 S.W.2d 420, 422 (Tenn. App. 1985); *Whittaker v. Care-More, Inc.*, 621 S.W.2d 395, 396 (Tenn. App. 1981). Because Tennessee continues to adhere to the foregoing "employee-at-will" rule, a presumption arises in this state that an employee is an employee at will. *Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Supp. 1273, 1280 (M.D. Tenn. 1990). In the present case, Rose does not dispute that he was an "at-will" employee when he was hired by the Department in 1979. Rose contends, however, that his "at-will" status was changed by the Department's promulgation of the employee handbook in 1982.

Even in the absence of a definite durational term, an employment contract still may exist with regard to other terms of employment. *Williams v. Maremont Corp.*, 776 S.W.2d 78, 80

---

[3]The handbook defines insubordination as "[d]isregarding or refusing to comply with instructions or job assignments given by authorized personnel," including "any verbal or non-verbal showing of disrespect toward your supervisor."

[4]Inasmuch as the resolution of this case is controlled by the above-stated issue of law, we agree that the case was appropriate for summary judgment. *Byrd v. Hall*, 847 S.W.2d 208, 216 (Tenn. 1993).

(Tenn. App. 1988); *accord Hooks v. Gibson*, 842 S.W.2d 625, 628 (Tenn. App. 1992).[5] In this

regard, this Court has recognized that an employee handbook can become a part of an employment

contract. *Smith v. Morris*, 778 S.W.2d 857, 858 (Tenn. App. 1988) (citing *Hamby v. Genesco, Inc.*,

627 S.W.2d 373 (Tenn. App. 1981)); *accord Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Supp.

1273, 1278 (M.D. Tenn. 1990). In order to constitute a contract, however, the handbook must

contain specific language showing the employer's intent to be bound by the handbook's provisions.

*Smith v. Morris*, 778 S.W.2d at 858. Unless an employee handbook contains such guarantees or

binding commitments, the handbook will not constitute an employment contract. *Whittaker v. Care-*

*More, Inc.*, 621 S.W.2d 395, 397 (Tenn. App. 1981). As stated by one court, in order for an

employee handbook to be considered part of an employment contract, "the language used must be

phrased in binding terms, interpreted in the context of the entire handbook, and read in conjunction

with any other relevant material, such as an employment application." *Claiborne v. Frito-Lay, Inc.*,

718 F. Supp. 1319, 1321 (E.D. Tenn. 1989).

Inasmuch as the determination of this issue depends upon the specific language used,[6]

we examine the provisions of the employee handbook distributed by the Public Works Department,

as well as other relevant documents. When he received a copy of the handbook in 1982, Rose signed

a form stating "I realize that these guidelines shall be enforced for fulfilling the purpose of the

Department." The revised handbook distributed in 1988 stated the following purpose:

> [T]o bring into the service of Tipton County Public Works
> Department the high degree of understanding, cooperation, efficiency,
> and unity which comes through systematic application of good
> procedures in personnel administration, and to provide a uniform
> policy for all employees, with all the benefits such a program insures.

The handbook indicated that the procedures did not apply to probationary employees:

---

[5]*See also Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Supp. 1273, 1278 (M.D. Tenn. 1990) ("Indeed, the non-existence of a definite term of employment at the outset of employment does not preclude the modification of the employment contract to provide for a definite term or to provide for other terms originally not contained in the employment contract.").

[6]*Gregory v. Hunt*, 24 F.3d 781, 785 (6th Cir. 1994); *Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Supp. 1273, 1279 (M.D. Tenn. 1990); *MacDougal v. Sears, Roebuck & Co.*, 624 F. Supp. 756, 759 (E.D. Tenn. 1985).

Each new County employee who has been appointed to a permanent position is required to serve a probationary period of at least 90 days. An employee may be terminated during this period for any reason without respect or reference to the procedures set forth in the rules. Employees who received promotions must serve a new probationary period of 30 days in the new positions if they are to be permanent. Employees who are transferred from one department to another shall be required to serve new probationary periods of 30 days in the new departments. . . . If your probationary period is determined satisfactory, you should be recommended for a permanent appointment.

In introducing the Department's progressive system for disciplining employees, the handbook stated:

## DEPARTMENT RULES

As an employee you have certain responsibilities in regard to your conduct towards your fellow employees, the department, and the public, which is not unlike the responsibilities you have as a citizen. Certain standards must exist to insure the orderly operation of the department. No attempt has been made to include every possible breach of good employee conduct, and where no specific rule exists, employees are expected to follow good common sense.

Below are listed the established department rules to serve as a guide for your conduct while employed with the Public Works Department of Tipton County. . . . Violation of these rules will bring written warnings and/or disciplinary actions including suspension and discharge.

In explaining the progressive discipline system for Class II offenses, the handbook stated:

The department recognizes and accepts the principle [of] progressive discipline and, therefore, has developed a positive approach to handle the violations of Class II rules on both an objective and progressive basis. The employee will receive a written reprimand for the first violation of Class II rule. The second violation of Class II rule will result in suspension without pay. The third violation of a Class II rule will result in dismissal.

The three violations must occur within a one year period of time. If they do not, then the discipline drops back one step.

Finally, the handbook provided that its policies could be unilaterally changed by the Public Works Department Committee:

The general policies of the Department are contained in this booklet. However, it is impossible to provide for every situation

which comes up. The Supervisor, Deputy Director, Director, and the Public Works Committee retains his/her, or their power to respond appropriately in these situations. The policies contained herein are subject to change by the Tipton County Public Works Department Committee without notice.

After carefully reviewing the specific language contained in Rose's employment application, the Department's employee handbook, and other relevant material, we conclude that the handbook's provisions are insufficient to overcome the presumption that Rose was an at-will employee. Although the acknowledgment form distributed with the handbook in 1982 warned employees that "these guidelines shall be enforced for fulfilling the purpose of the Department," we do not perceive this language to be a demonstration by the Public Works Department of its intent to be contractually bound by the handbook's provisions. Similarly, we conclude that the handbook's stated purpose, "to provide a uniform policy for all employees," is not the type of specific guarantee required to elevate the handbook to contractual status. Moreover, although the handbook refers to the system of progressive discipline as "established department rules," any mandate suggested by this language is undermined by subsequent language indicating that the rules serve as a "guide" for the employee's conduct. Inasmuch as the foregoing "language is not specific enough to give rise to a guarantee," we hold that the handbook's provisions are insufficient to create a binding contract between Rose and the Public Works Department. *Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Supp. 1273, 1281 n.3 (M.D. Tenn. 1990).

In so holding, we reject Rose's argument that the handbook's provision regarding probationary employees requires a different result. The provision indicates that probationary employees may be terminated "without respect or reference to the procedures set forth in the rules." Rose contends that, by implication, non-probationary employees may be terminated only in accordance with the progressive discipline system. In rejecting this argument, we note that creating such a contract by implication appears to be in contravention of the requirement that the employee handbook contain "specific language" of "contractual intent." *See Smith v. Morris*, 778 S.W.2d 857, 858 (Tenn. App. 1988); *accord Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Supp. 1273, 1279 (M.D. Tenn. 1990).

Our holding that the handbook is not a part of the employment contract is bolstered

by the existence of a provision in the handbook indicating that its policies are subject to change without notice by the Public Works Department Committee. "Any language that preserves a unilateral right on the part of the employer to alter or modify the contents of the handbook" generally precludes the handbook from being considered an employment contract. ***Claiborne v. Frito-Lay, Inc.***, 718 F. Supp. 1319, 1321 (E.D. Tenn. 1989) (handbook reserved to employer "the right to make changes to the material contained in this guide from time-to-time to meet changing conditions and business needs"); ***see, e.g., Smith v. Morris***, 778 S.W.2d 857, 858 (Tenn. App. 1988) (handbook's language clearly showed "that modifications were anticipated"); ***Bringle v. Methodist Hosp.***, 701 S.W.2d 622, 624 (Tenn. App. 1985) (handbook reserved to employer "right to change and abolish policies, procedures, rules and regulations");[7] ***see also Gregory v. Hunt***, 24 F.3d 781, 786 (6th Cir. 1994) (handbook provided that policies were "subject to change by management, unilaterally and without notice"); ***Davis v. Connecticut Gen. Life Ins. Co.***, 743 F. Supp. 1273, 1279 (M.D. Tenn. 1990) (handbook reserved to employer "the right to change any or all such policies, practices and procedures in whole or in part at any time, with or without notice to you"). Such language instead indicates "that the handbook simply constituted a set of guidelines or a source of information for an employee." ***Claiborne v. Frito-Lay***, 718 F. Supp. at 1321. In the present case, this conclusion is supported by language in the handbook indicating that the Department rules are "to serve as a guide" for the employee's conduct.

Our research has revealed only two appellate decisions in this state holding that an employee handbook was a part of the employment contract. The first such decision is easily distinguishable from the present case. In ***Hamby v. Genesco, Inc.***, 627 S.W.2d 373, 376 (Tenn. App. 1981), the handbook specifically provided that, for so long as the employment relationship

---

[7]For unpublished decisions on this subject, see ***Guekel v. Cumberland-Swan, Inc.***, No. 01A01-9410-CV-00482, 1995 WL 386558, at *3 (Tenn. App. June 30, 1995) (handbook reserved to employer "the right to make changes in the guidelines of their application as it deems appropriate . . . with or without notice"); ***Gaines v. Response Graphics, Inc.***, No. 01-A-01-9204-CV-00181, 1992 WL 319441, at *2 (Tenn. App. Nov. 6, 1992) (handbook provided that it could be revised without notice); ***Crigger v. Columbia Power & Water Sys.***, No. 01-A-01-9001-CV-00036, 1990 WL 121570, at *2 (Tenn. App. Aug. 24, 1990) (handbook expressly stated that it could be unilaterally changed at any time by employer), ***perm. app. denied*** (Tenn. Jan. 28, 1991); ***Smith v. Dixie Cement Co.***, No. C.A. 89-248-II, 1989 WL 146739, at *3 (Tenn. App. Dec. 6, 1989) (handbook specifically provided that changes may be made "from time to time"); ***Blalock v. Hecks Discount Stores***, No. C.A. 140, 1986 WL 4591, at *1 (Tenn. App. Apr. 18, 1986) (handbook reserved to employer "right to make changes in the guidelines or their application as it deems appropriate").

continued, these policies "shall be The Guaranteed Policies, Practices and Procedures" of the employer. As previously discussed, the employee handbook in the present case contains no such language guaranteeing the application of its guidelines.

The more difficult case to distinguish is *Williams v. Maremont Corp.*, 776 S.W.2d 78 (Tenn. App. 1988). In that case, the court enforced a handbook provision stating that, upon the resumption of work following a layoff, "employees will be recalled in the order of seniority." *Id.* at 80. Emphasizing the word "will," the court reasoned that the employer "was not obligated to create its seniority policy, but having done so to the detriment of those relying upon the policy, it may not now treat its promise as an empty one." *Id.* at 80-81.

Nevertheless, we believe the present case to be distinguishable from *Maremont*. First, we note that the *Maremont* decision involved a recall provision, while the handbook provisions at issue in the present case directly affect the employer's right to terminate employees at will. Courts have expressed a greater willingness to enforce the provisions of an employee handbook when the provisions affect an employee's right to receive benefits, as opposed to an employer's right to terminate its employees. *See Graves v. Anchor Wire Corp.*, 692 S.W.2d 420, 422 (Tenn. App. 1985); *see also Gregory v. Hunt*, 24 F.3d 781, 785 (6th Cir. 1994); *Shelby v. Delta Air Lines*, 842 F. Supp. 999, 1014 (M.D. Tenn. 1993), *aff'd*, 19 F.3d 1434 (6th Cir. 1994). Further, the element of reliance referred to in the *Maremont* decision appears to be lacking in this case. In *Maremont*, employees with seniority may have foregone other employment opportunities in reliance on the employer's seniority policy of conferring increased benefits upon employees with ten years of employment. No such reliance has been alleged by Rose in the present case. Finally, we note that the *Maremont* decision makes no mention of any provision preserving a unilateral right on the part of the employer to alter or modify the handbook's contents. In the present case, the employee handbook provided that its policies were "subject to change by the Tipton County Public Works Department Committee without notice." As previously indicated, the presence of such a provision generally precludes the handbook from being considered a contract. *Claiborne v. Frito-Lay, Inc.*, 718 F. Supp. 1319, 1321 (E.D. Tenn. 1989).

The trial court's judgment is affirmed. Costs of this appeal are taxed to Appellant.

_____
FARMER, J.



_____
CRAWFORD, P.J., W.S. (Concurs)


_____
LILLARD, J. (Concurs)