**DADE INTERNATIONAL, INC.**

v.

**Tracy IVERSON and Johnson & Johnson Clinical Diagnostics, Inc.**

No. 3:97–0878.

United States District Court, M.D. Tennessee, Nashville Division.

March 17, 1998.

Harold Frederick Humbracht, Jr., Boult, Cummings, Conners & Berry, P.L.C., Nashville, TN, Irving B. Levinson, James W. Marks, Julie L. Schultz, Holleb & Coff, Chicago, IL, for Dade International, Inc.

Hal Martin, Nashville, TN, for Tracy Iverson.

John S. Hicks, Baker, Donelson, Bearman & Caldwell, Nashville, TN, W. Michael Richards, Michael Richards, Baker, Donelson, Bearman & Caldwell,Memphis, TN, John R. Middleton, Ellen Mokover Martin, Patterson, Belknap, Webb & Tyler, New York, NY, for Johnson & Johnson Diagnostic, Inc.

## MEMORANDUM–OPINION

JOHN T. NIXON, Chief Judge.

Pending before the Court is the Defendant Johnson & Johnson's Motion to Dismiss Counts I, III, and IV of the Complaint (Doc. No. 11), to which the Plaintiff has responded

(Doc. No. 21), and the Defendant has replied (Doc. No. 22). Also before the Court is the Defendant Tracy Iverson's Motion to Dismiss and for Summary Judgment of the counts against him (Doc. No. 16), to which no response has been filed. For the reasons more fully outlined below, Defendant Johnson & Johnson's Motion is GRANTED,[1] and Defendant Iverson's Motion is GRANTED in part and DENIED in part. Accordingly, the claims against Johnson & Johnson are DISMISSED in their entirety with prejudice, thereby dismissing Johnson & Johnson as a party to this action, and the breach of contract claim against Defendant Iverson is DISMISSED with prejudice. Finally, the Court RESERVES JUDGMENT on Iverson's Motion for Summary Judgment on Count II of the Complaint.

This is a diversity action pursuant to 28 U.S.C. § 1332. Dade International ("Dade") is in the clinical diagnostics products business. Its client base consists primarily of hospital and medical laboratories. Tracy Iverson was employed by Dade as the Director of Healthcare Systems from 1996 through 1997. Prior to his employment at Dade, Iverson was employed for almost twenty years with DuPont as the Implementation Manager, and was responsible for the implementation and ongoing strategy development between DuPont and Columbia/HCA, one of its largest customers. Iverson was hired by Dade after the company acquired DuPont through an asset and sales purchase. At Dade, he was named the Contract Compliance manager for its sole source contract with Columbia/HCA. In that capacity, he was allegedly privy to highly confidential information concerning Dade's relationship with Columbia/HCA, including pricing and cost structure for certain products, information concerning new products, and marketing and customer information. On June 9, 1997, Iverson submitted his letter of resignation at Dade and informed the company that he had accepted a position with Johnson & Johnson ("J & J"), one of Dade's strongest competitors.

Dade alleges that immediately prior to Iverson's resignation announcement, he pressed to obtain sensitive information ahead of schedule in order to use this information in the course of his employment with J & J. It claims that Iverson's conduct constituted a breach of contract, and a misappropriation of trade secrets. Furthermore, it asserts that J & J's act of hiring Iverson and giving him a position where he would be able to use Dade's confidential information constituted unlawful procurement of breach of contract, and unfair competition.

The breach of contract allegation against Iverson is based on a handbook that was distributed to employees by Dade. Employees, including Iverson, were required to sign a form confirming that they had read the handbook and understood it. The manual is entitled "Standards for Ethics and Business Conduct," and contains guidelines relating to such issues as workplace harassment, political activities, acceptance of gifts, securities trading, and, most notably for the purposes of this action, confidential information and competitive information. (Compl. Ex. B.) Specifically, it provides that: "As part of their employment with Dade, employees agree not to disclose or use for their own benefit the confidential information and trade secrets of the company." (Id. at 3.)

The parties do not dispute that Tennessee law should govern the above claims. In Tennessee, an employee handbook may become an employment contract if it states on its face the employer's agreement to be bound by the terms of the contract. *Rose v. Tipton County Public Works Dept.*, 953 S.W.2d 690, 692 (Tenn.App.1997). This intent must be expressed in the form of a guarantee or a binding commitment, and must be determined by reference to the context of the entire handbook, "read in conjunction with any other relevant material, such as an employment application." *Id.* (quoting

---

1. The Court notes that Defendant Johnson & Johnson has no interest in the Court's dismissal of Count I of the Complaint, as it is being asserted only against Defendant Iverson. However, since the Court has granted Defendant Iverson's motion to dismiss this Count of the Complaint, the Court will also consider Defendant Johnson & Johnson's request to dismiss this Count as granted.

Claiborne v. Frito–Lay, Inc., 718 F.Supp. 1319, 1321 (E.D.Tenn.1989)).

■ A thorough reading of the "Standards for Ethics and Business Conduct" manual however, reveals no language indicating an intent by Dade to be bound by its terms either in its text, its introduction, or in the acknowledgment form which the employees were required to sign. The manual generally sets forth the company policy with respect to ethical issues that arise in the workplace. Nowhere in the text of the manual does the company indicate any intent to be contractually bound by the manual. Furthermore, the introduction to the manual, which consists of a letter signed by Scott T. Garrett, the President and CEO of Dade, similarly fails to express a binding commitment on behalf of Dade. While the introduction does state that the company "share[s] a commitment with ... employees to work honestly, ethically and legally," this is not sufficient to connote an intent to be bound by the handbook's terms. *Compare Williams v. Maremont Corp.*, 776 S.W.2d 78, 80 (Tenn.Ct.App.1988) (language in handbook stating that employees *will* be recalled in order of seniority held binding) *with Rose*, 953 S.W.2d at 693 (manual which referred to "established rules" was not held binding because manual also indicated that rules only served as a "guide"). In the present case, the fact that the company asserted that it was "committed" to working with employees to maintain an ethical workforce is not "specific enough to rise to a guarantee." *See Rose*, 953 S.W.2d at 693 (making a similar conclusion with respect to a manual which was to serve as a "guide"). Finally, the acknowledgment letter which was signed by Iverson only asked employees to confirm that they had read and understood the manual. It did not require employees to agree to be bound by the manual, or stipulate that the employer itself would be bound by it.

■ Consequently, the Court finds that as a matter of law, the "Standards for Ethics and Business Conduct" manual was not an employment contract. As the Plaintiff has failed to prove the existence of a valid contract, Counts I and III of the Complaint, which allege breach of contract and unlawful procurement of a breach of contract, are dismissed. *See Winfree v. Educators Credit Union*, 900 S.W.2d 285, 290 (Tenn.Ct.App. 1995) ("Tennessee requires a breach in any action for unlawful interference").

■ The Court also concludes that the unfair competition claim against J & J should be dismissed. In its most common form, the tort of unfair competition requires a showing that:

> (1) the defendant engaged in conduct which 'passed off' its organization or services as that of the plaintiff; (2) in engaging in such conduct, the defendant acted with an intent to deceive the public as to the source of services offered or authority of its organization; and (3) the public was actually confused or deceived as to the source of the services offered or the authority of its organization.

*Sovereign Order of St. John v. Grady*, 119 F.3d 1236, 1243 (6th Cir.1997). This tort is generally alleged as part of a trademark infringement case. *See Frisch's Restaurants, Inc., v. Elby's Big Boy*, 849 F.2d 1012, 1015 (6th Cir.1998) (facts which support claim for trademark infringement also support unfair competition claim).

■ The Plaintiff has not asserted any facts which fit within the elements of the tort of unfair competition as enumerated above. However, in its opposition papers, the Plaintiff asserts that in *AmeriGas Propane v. Crook*, 844 F.Supp. 379 (M.D.Tenn.1993), this Court recognized a cause of action for unfair competition against a former employee who had misappropriated a company's confidential information. *Id.* at 389. The Defendants point out that *AmeriGas* is distinguishable from the present case because there, the Court found that the employee had breached a non-competition agreement. *Id.* at 385. In contrast, in the present case, the Court has not found that a breach of contract has occurred. Furthermore, the Court notes that *AmeriGas* also involved a cause of action against an *employee* who was a party to the contract. Here, the cause of action is being asserted against the *company* who hired a competitor's former employee in order to

order to make use of the employee's knowledge of the competitor's trade secrets.

The Tennessee Court of Appeals has considered it appropriate to extend the tort of unfair competition beyond the context of trademark infringement in certain circumstances. In *B & L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W.2d 674 (Tenn.Ct.App.1995), for instance, the court held that an action for unfair competition could be sustained for a breach of a fiduciary relationship by an employee who uses confidential information to the employer's detriment. *Id.* at 681. In so doing, the court noted that "[u]nfair competition is a generic name for several related torts involving improper interference with business prospects." *Id.* (citing Prosser and Keeton on the Law of Torts § 130 at 1013 (5th ed.1984)).

■ Aside from this general statement of the nature of an unfair competition claim, however, the Court has been unable to find any case law which has specifically extended the tort of unfair competition to a case similar to the one at bar—where a company hired a competitor's employee and used the employee's knowledge of its competitor's trade secrets.[2] While the *B & L* court did state that "all unfair competition does not stem from a breach of a fiduciary relationship," it did not elaborate on what other kinds of actions can constitute unfair competition.[3] Because the *B & L* court relied in part on Prosser and Keeton in its opinion, this Court will also refer to that treatise in determining whether a cause of action for unfair competition can be asserted under the present facts.

■ Prosser and Keeton describes the tort of unfair competition as arising "when the defendant engages in any conduct that amounts to a recognized tort and when that tort deprives the plaintiff of customers or other prospects." Prosser and Keeton, § 130 at 1014. It further emphasizes that "[u]nfair competition thus does not describe a single course of conduct or a tort with a specific number of elements; it instead describes a general category into which a number of new torts may be placed when recognized by the courts." *Id.* at 1015. Thus, it appears that the tort of unfair competition is simply a remedy for economic loss that is incurred from an underlying violation of a tort or a breach of contract.

■ In the present case, the Plaintiff has not alleged a cognizable cause of action against J & J for a violation of any tort independent of the tort of unfair competition. Nor does it appear that the Plaintiff could have alleged a cognizable tort against J & J, as Tennessee does not recognize the tort of interference with prospective economic advantage. *Nelson v. Martin*, 958 S.W.2d 643, 645–46 (Tenn. 1997). Furthermore, as expressed above, since there was no contract between Iverson and Dade, a cause of action for unfair competition could not be sustained on the basis of the underlying tort of procuring a breach of contract. The Plaintiff itself has not alerted the Court to any other possible torts from which it could base its claim of unfair competition, nor can the Court conceive of one. Accordingly, the Court will dismiss Dade's claim of unfair competition by Defendant J & J.

■ Finally, with respect to the cause of action against Iverson for misappropriation of trade secrets, the Court concludes that Dade has asserted enough facts in its Complaint to survive a motion to dismiss. A cause of action for misappropriation of trade secrets involves the following elements: (1) the existence of a trade secret; (2) acquisition of the trade secret as a result of a confidential relationship; and (3) unautho-

---

**2.** Notably, the Plaintiff does not allege that J & J's hiring of Iverson was done with an intent to deceive. It only asserts that J & J "hired Iverson and placed him in a position where he would inevitably use Dade's confidential information in the performance of his job and where this confidential information would be best utilized to Dade's detriment and [J & J's] benefit." (Compl. ¶ 68 .)

**3.** The Plaintiff cannot assert a cause of action against J & J based on a breach of a fiduciary relationship because J & J is its competitor, not its employee. Furthermore, since the Plaintiff has not asserted a cause of action for unfair competition against Iverson, the Court need not decide whether Iverson himself breached a fiduciary relationship and thus committed unfair competition against Dade.

rized use of the secret. *TGC Corp. v. HTM Sports,* 896 F.Supp. 751, 756 (E.D.Tenn. 1995). Although Iverson has submitted an affidavit denying that he had knowledge of any trade secrets (Iverson Decl. ¶ 7), in a motion to dismiss, the Court's only task is to determine whether a cognizable claim has been pleaded in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). Dade has asserted every element of the tort for misappropriation of trade secrets in its Complaint. (*See* Compl. ¶¶ 50–56.) Accordingly, it would be inappropriate to dismiss this claim at this juncture. Although the Defendant has also asked this Court to dismiss the Count on the basis of summary judgment, there has been insufficient discovery to permit the Court to adequately rule on summary judgment at this juncture. Accordingly, the Court will RESERVE JUDGMENT on Iverson's motion for summary judgment on Count II pending further discovery.

In conclusion, the Court DISMISSES Counts I, III, and IV of the Complaint with prejudice, DENIES Defendant Iverson's Motion to Dismiss Count II, and RESERVES JUDGMENT on Defendant Iverson's Motion for Summary Judgment on Count III of the Complaint.

It is so ORDERED.