# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **MICHAEL KING,** | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | **Maury Circuit No. 6503** |
| | ) | |
| **VS.** | ) | **Appeal No. 01A01-9711-CV-00624** |
| | ) | |
| **TFE, INC.,** | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

**FILED**

September 1, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

### APPEAL FROM THE CIRCUIT COURT OF MAURY COUNTY
### AT COLUMBIA, TENNESSEE
### THE HONORABLE JIM T. HAMILTON, JUDGE

**JOHN W. PALMER**
**THE PALMER LAW FIRM**
Dyersburg, Tennessee
Attorney for Appellant

**KIM B. KETTERING**
**HARDIN, PARKES & KETTERING, PLLC**
Columbia, Tennessee
Attorney for Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

In this action filed against TFE, Inc. (hereafter "TFE"), Michael King appeals the trial

court's grant of summary judgment to TFE as related to King's claims for breach of an alleged employment contract. The trial court granted TFE's motion for summary judgment based on the court's conclusion that an employee handbook distributed by TFE did not constitute an employment contract. For the reasons hereafter stated, we affirm the trial court's grant of summary judgment.

## FACTS AND PROCEDURAL HISTORY

King began working for TFE as a truck driver on November 5, 1988, at which point TFE provided to King a copy of an employee manual, which was titled "TFE Professional Staffing." During King's employment with TFE, this employee manual was occasionally updated either by replacement pages or by supplemental additional pages that were sent to King. At least as of the time period relevant to this lawsuit, this manual was divided into three separate sections: (1) Employee Handbook; (2) Schedule Wages & Fringes; and (3) Employee Notices.

On March 25, 1993, King was involved in a traffic accident while driving a truck (the tractor only) during the course of his employment. Apparently, this accident occurred when a city garbage truck pulled out in front of King, at which time King attempted to avoid the truck by going around its rear, but lost control and ran off the road. During King's deposition, he described the events surrounding this accident as follows:

    Q    What was the weather like?
    A    It was sprinkling rain, drizzle.
                        . . . .
    Q    Okay. You didn't have a trailer hooked onto the tractor part.
    A    Yes, I was bob-tailing.
    Q    Just tell me what happened, or what -- you're coming down the
    road,what caused the wreck to happen?
    A    The City garbage truck pulled out in front of me.
                        . . . .
    Q    And when this vehicle pulled out or whatever, what did you do?
    A    I applied my brakes. He proceed to back off the road. I proceed to
         let off the brakes. He stopped, clearing the path where I could
    accelerate. When I accelerated again, that's all I -- I done my
    knowledge -- to avoid the wreck any way possible, and I swayed to go in
    behind him. As soon as the truck hit the shoulder of the road where I could
    hopefully get part of the garbage truck or go completely around      him, the
    shoulder gave way. The next thing I know, the truck was upside down.

After this traffic accident, King was taken to a hospital. Thereafter, during the course of

2

medical treatment and recovery, King was paid temporary workers' compensation disability benefits up through February 25, 1994, at which point he was released by his treating physician to return to work.  On Monday, March 7, 1994, King spoke with Richard Gilbert, who was King's regional manager and driver supervisor, on the telephone.  During this conversation, Gilbert informed King that King's employment was being terminated, and he referenced and drew King's attention to a provision within the employee manual which explained that TFE employees could be "subject to discharge" for a "major chargeable" accident.  The next day, on March 8, 1994, Gilbert provided to the Tennessee Department of Employment Security (and to King, who applied for and ultimately drew unemployment compensation) a copy of a "separation notice," which explained that King's "discharge" was based upon his involvement in a "major preventable accident."  On this same date, Gilbert sent to King a letter that explained the following:

> As discussed, TFE, Inc., has carefully reviewed all relevant data concerning your March 25, 1993, accident, and found that it meets the definition of a major preventable (chargeable) accident.
>
> For this reason, TFE, Inc., elects to terminate your employment under the provisions of Rule 1A, as published in your copy of the Driver Handbook.
>
> In closing, please be advised that any request to have the Drivers' Committee review this matter, and to thereafter make a recommendation as to whether the company should reconsider this action, should be submitted in accordance with procedures also contained within the Driver Handbook.

Thereafter, King, through his attorney, requested that a driver committee hearing be held to review King's termination.  This driver committee, which is the initial avenue for review of disciplinary action according to the "Employee Handbook" under the heading "Rules and Regulations" and under the sub-heading "Appeal of Company Disciplinary Action," is a committee that is essentially comprised of popularly elected driver employees.  This driver committee hearing took place on April 30, 1994, at which time the driver committee opined and "recommended" that King's accident be deemed "non-preventable," and that King's employment should not have been terminated.  After the April 30, 1994 driver committee hearing, King never heard from or spoke with TFE again about his employment, and his employment was not reinstated.

On March 6, 1995, King commenced this action against TFE, alleging that King's employment with TFE was wrongfully terminated in violation of contractually binding terms

3

and conditions set forth in TFE's employment manual, and alleging that TFE terminated King's employment in retaliation of King's workers' compensation claim. On March 10, 1997, TFE filed a motion for summary judgment, which came to be heard by the trial court on August 21, 1997. In addition to the pleadings, depositions from both King and Gilbert were filed with the trial court for its consideration on TFE's motion for summary judgment. Thereafter, on October 3, 1997, the trial court entered an order that granted TFE's motion for summary judgment. In this order, the trial court explained, among other things, that the provisions within TFE's employee manual that related to disciplinary procedures did not contain any specific language indicating a guarantee or binding commitment from TFE.[1]

---

1. The provisions that are found within TFE's employee manual that pertain to disciplinary procedures, as related to the instant case, are as follows:

### DISCIPLINARY PROCEDURES

[T]o insure [sic] that we protect and preserve the excellent reputation we have established, management has developed a *guideline* of violations of professional performance standards and reasonable disciplinary penalties that may be imposed upon proven violations of these standards.

. . . .

The following Rules and Regulations apply to all employees who have completed their 90-day familiarization period.

*The Company retains the right to modify, add to or eliminate work rules at any time as it deems necessary.*

### RULES AND REGULATIONS

The following rules and regulations and the penalties to be charged for violations of the same *are set forth as guidelines* so that all employees may know what is expected of them in the general conduct of the Company's business. *This list of violations is not inclusive and the company may add to or modify it at any time.*

Protests of discipline must be filed within ten (10) days after notice is received by employees.

1.      ACCIDENTS:

A.      Major Chargeable as defined by DOT      1st offense-Subject to discharge

. . . .

8.      FAMILIARIZATION PERIOD EMPLOYEES:

During the first ninety (90) days of employment new employees may be discharged at management's discretion without regard to the above procedures.

9.      APPEAL OF COMPANY DISCIPLINARY ACTION:

[T]he driver committee is your avenue of appeal for any complaint you may have regarding your treatment. The management of TFE, Inc., will give every *consideration* to their recommendations and findings.

. . . .

Employees objecting to the disciplinary action taken will have ten (10) days to file a notice to that effect in writing with TFE, Inc. In the absence of such protest, such action shall be deemed final.

### INVOLUNTARY TERMINATION

In the event an employee is involuntarily terminated from employment with TFE, Inc., and the employee exhausts the company's internal appeal provisions, at the employees request TFE will *consider* submitting the matter to an Arbitrator for a final and binding remedy. The request for arbitration should be made by the employee . . . within ten (10) days of the employee being notified of termination. . . . .

On appeal, King has asserted no error regarding the trial court's entry of summary judgment as related to King's retaliatory discharge claim. The sole issue that he has presented for this Court's consideration is as follows:

> Does a factual dispute exist that creates a genuine issue for trial as to whether the employment of [King] was terminated by . . . TFE, Inc. in violation of contractually binding provisions of the "TFE Professional Staffing" manual?

## ANALYSIS

As in prior similar cases, we begin our analysis of this issue with the well-established rule "that a contract for employment for an indefinite term is a contract at will and can be terminated by either party at any time without cause." Rose v. Tipton County Public Works Dept., 953 S.W.2d 690, 691 (Tenn. App. 1997); Bringle v. Methodist Hosp., 701 S.W.2d 622, 625 (Tenn. App. 1985). "Because Tennessee continues to adhere to the foregoing 'employee-at-will' rule, a presumption arises in this state that an employee is an employee at will." Rose, 953 S.W.2d at 691-92 (citing Davis v. Connecticut Gen. Life Ins. Co., 743 F. Supp. 1273, 1280 (M.D. Tenn. 1990). During King's deposition in the instant case, he was asked, "with regard to TFE, were you under -- is it your position or your contention that you had -- you were under some contract for a term with them?" King's direct response to this specific question was "no." King essentially contends, however, that his "at-will" status was changed by TFE's promulgation and issuance of its employee manual. In this regard, this Court has previously stated and summarized the following:

> Even in the absence of a definite durational term, an employment contract still may exist with regard to other terms of employment. *Williams v. Maremont Corp.*, 776 S.W.2d 78, 80 (Tenn. App. 1988); *accord Hooks v. Gibson*, 842 S.W.2d 625, 628 (Tenn. App. 1992). In this regard, this Court has recognized that an employee handbook can become a part of an employment contract. *Smith v. Morris*, 778 S.W.2d 857, 858 (Tenn. App. 1988) (citing *Hamby v. Genesco, Inc.*, 627 S.W.2d 373 (Tenn. App. 1981)); *accord Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Supp. 1273, 1278 (M.D. Tenn. 1990). In order to constitute a contract, however, the handbook must contain specific language showing the employer's intent to be bound by the handbook's provisions. *Smith v. Morris*, 778 S.W.2d at 858. Unless an employee handbook contains such guarantees or binding commitments, the handbook will not constitute an employment contract. *Whittaker v. Care-More, Inc.*, 621 S.W.2d 395, 397 (Tenn. App. 1981). As stated by one court, in order for an employee handbook to be considered part of an employment contract, "the language used must be phrased in binding terms, interpreted in the context of the entire handbook, and read in conjunction with any other relevant material, such as an employment application."

*Claiborne v. Frito-Lay, Inc.*, 718 F. Supp. 1319, 1321 (E.D. Tenn. 1989).

Rose, 953 S.W.2d at 692. While we have previously recognized that "an employee handbook" can become a part of an employment contract in some cases, our concern in the instant case is limited to the specific provisions set forth within TFE's employee manual that govern TFE's "Disciplinary Procedures," "Rules and Regulations," and "Involuntary Termination."[2] Our review of these provisions reveals that the pertinent language clearly reflects TFE's intent *not* to be bound either by particular procedures described therein, or by the "recommendation" of the driver committee.[3] Under the heading "Disciplinary Procedures," TFE's manual explains that its management "has developed a *guideline* of violations of professional performance standards and reasonable disciplinary penalties." TFE thereafter states, "*The Company retains the right to modify, add to or eliminate work rules at any time as it deems necessary.*" An employer's reservation of a unilateral right to modify such provisions within an employee handbook generally precludes such provisions from being considered part of the parties' employment contract. *See* Rose, 953 S.W.2d at 693-94 (citing Claiborne v. Frito-Lay, Inc., 718 F. Supp. 1319, 1321 (E.D. Tenn. 1989)). Under the heading "Rules and Regulations," TFE's manual again explains that the "rules and regulations and the penalties to be charged for violations of the same are set forth as *guidelines*, and that the "list of violations is not inclusive and *the company may add to or modify it at any time*." Under the rules and regulations sub-heading "Appeal of Company Disciplinary Action," TFE's manual explains that "the driver committee is your avenue of appeal," but that the management of TFE will only "give every *consideration* to

---

2. *See supra* note 1.

3. We note, however, that King's brief places considerable reliance upon one particular provision within the employee manual, which states:

> Following the rules set forth in the American Trucking Association's safety awards program, TFE will make the initial determinations regarding an accident's status. A driver may appeal a finding of "preventable" to one of the existing driver safety committees. Either TFE or the driver may appeal a driver committee decision to ATA's panel of safety experts whose decision shall be final and binding.

We need not resolve whether this provision reflects an intent to be bound, however, because this particular provision does not pertain to TFE's "disciplinary procedures," "rules and regulations," and "involuntary terminations." Instead, this provision pertains to and is a sub-heading of TFE's "Safety Award Program," which, as revised, is set forth within the second part of TFE's employee manual, titled "Schedule Wages & Fringes." This "Safety Award Program" provides employment *benefits* relating to a driver's pay scale, which increases over time and/or mileage traveled in the absence of the driver having a preventable accident. "A preventable accident will not cost a driver increases previously earned under this program. However, a driver having a preventable accident will serve a penalty period during which the driver cannot progress to a higher level."

their *recommendations* and findings." Lastly, under the heading "Involuntary Termination," TFE simply states that it will simply "*consider* submitting the matter to an Arbitrator" upon an employee's request after submission to the driver committee. Therefore, as we have stated above, the language of the pertinent provisions within TFE's employee manual clearly reflects TFE's intent <u>not</u> to be bound either by particular procedures described therein, or by the "recommendation" of the driver committee. Moreover, as these provisions within TFE's employee manual must be "read in conjunction with any other relevant material," we find it relevant to further note that King signed a document upon receipt of TFE's employee manual that acknowledged, among other things, that the manual in no way created or established an employment contract.

CONCLUSION

Accordingly, we hereby affirm the trial court's grant of summary judgment to TFE. Costs are taxed to Michael King, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

7

_____

CRAWFORD, P.J., W.S.

_____

LILLARD, J.