IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
APRIL 21, 2009 Session

## CAREY FAULKNER v. CITY OF BARTLETT

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-08-0062-2    Arnold B. Goldin, Chancellor**

_____

**No. W2008-02225-COA-R3-CV - Filed June 29, 2009**

_____

The appellant, a former police officer, filed a petition for writ of certiorari in the chancery court alleging that her due process rights were violated when the City of Bartlett terminated her employment. We affirm the trial court's finding that the appellant was an employee-at-will, and therefore, she had no protected property interest in her job.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Clyde W. Keenan, Memphis, TN, for Appellant

Edward J. McKenney, Jr., Memphis, TN, for Appellee

**OPINION**

## I.  FACTS & PROCEDURAL HISTORY

Carey Faulkner ("Officer Faulkner") was employed by the City of Bartlett as a police officer beginning in 1999. On August 18, 2007, Officer Faulkner held a party at her home which was attended by neighbors and police officer trainees. Drinking and nude swimming took place at the party, and Officer Faulkner's husband was subsequently charged with sexually assaulting one of the party guests. The local media reported about Officer Faulkner's party and previous actions for which she had been disciplined by the police department. In 1999, Officer Faulkner was disciplined following an incident involving nude swimming at an apartment complex. In 2002, she had been disciplined after getting on stage at a topless club with a topless dancer.

Officer Faulkner was placed on leave pending an internal investigation. On August 31, 2007, Officer Faulkner attended an administrative hearing before a disciplinary board consisting of three superior officers. Officer Faulkner called twelve witnesses at the hearing, which lasted approximately six hours. The disciplinary board subsequently found Officer Faulkner guilty of violating various provisions of the Law Enforcement Code of Ethics and the Bartlett Personnel Manual and recommended that her employment be terminated.[1] On September 4, 2007, Officer Faulkner was notified by the assistant chief of police that her employment with the City of Bartlett was terminated.

Officer Faulkner then filed a complaint and grievance, requesting a hearing before the City's Grievance Review Board. She requested that eighteen witnesses be subpoenaed, and such subpoenas were issued. At her hearing before the Grievance Review Board on November 7, 2007, Officer Faulkner was represented by counsel, she presented testimony from fourteen witnesses, and her attorney cross-examined the City's witnesses. Following a seven-hour hearing, the Grievance Review Board issued detailed findings and unanimously recommended to the Mayor that Officer Faulkner's termination be upheld. The Board concluded that Officer Faulkner was untruthful when testifying about several issues, and it found "ample evidence" that Officer Faulkner had violated the

---

[1] The Bartlett Personnel Manual provides that "disciplinary action up to and including termination may be taken" based on "[c]onduct unbecoming of a City employee and/or detrimental to the reputation of the Department or City" or "[g]ross misconduct or conduct unbecoming an employee in the city service." Officer Faulkner was found guilty of violating the following relevant provisions of the Law Enforcement Code of Ethics:

VIII.  Integrity:  . . .
The public demands that the integrity of police officers be above reproach. Police officers must, therefore, avoid any conduct that might compromise integrity and thus undercut the public confidence in a law enforcement agency. . . . Police officers must not receive private or special advantage from their official status. Respect from the public cannot be bought; it can only be earned and cultivated.
. . . .
XI.  Private Life:  Police officers will behave in a manner that does not bring discredit to their agencies or themselves.
   A police officer's character and conduct while off duty must always be exemplary, thus maintaining a position of respect in the community in which he or she lives and serves. The officer's personal behavior must be beyond reproach.

aforementioned provisions of the Law Enforcement Code of Ethics and the Bartlett Personnel Manual.

The Mayor adopted the findings of the Grievance Review Board and upheld the decision to terminate Officer Faulkner's employment, notifying Officer Faulkner of his decision by letter on November 20, 2007.

On January 10, 2008, Officer Faulkner filed a petition for writ of certiorari in the Shelby County Chancery Court. Officer Faulkner claimed that the trial court should review her termination in accordance with Tennessee Code Annotated section 27-9-114[2] and the Uniform Administrative Procedures Act, which allows the court to reverse or modify a decision that is, among other things, "[i]n violation of constitutional or statutory provisions." **Tenn. Code Ann. § 4-5-322(h).** Although it is undisputed that the City of Bartlett does not have a formal civil service system, Officer Faulkner contended that the City had "effectively created a civil service merit system" through its City Charter and Personnel Manual. Officer Faulkner claimed that she was terminated without just cause and denied due process of law because the Mayor had effectively prejudged her case and found her guilty of inappropriate behavior before the investigation and hearings.

The City of Bartlett filed an answer denying that it had implemented a civil service system and claiming that Officer Faulkner was an employee at will with no constitutionally protected property interest in continued employment. The City of Bartlett claimed that because it did not have a civil service system of employment, the court should review Officer Faulkner's termination under the common law writ of certiorari, which limits review to whether an administrative agency has exceeded its authority or has acted illegally, arbitrarily, or fraudulently. *See **Tidwell v. City of Memphis***, 193 S.W.3d 555, 559 (Tenn. 2006).

The record of the administrative proceedings was subsequently transferred to the chancery court. After reviewing the record and hearing arguments from counsel, the trial court entered a final order on September 23, 2008. The court found that Officer Faulkner was an employee-at-will and that the City of Bartlett did not have a civil service system that required "just cause" to terminate employees. The trial court noted that the City had implemented a grievance procedure and Grievance Review Board, but the court found that the Grievance Review Board did not sit in an adjudicatory capacity; rather, it was merely a fact-finding committee that made recommendations to the Mayor. The court concluded that the City's grievance procedure "does not alter the at-will status of city employees." As such, the court found that Officer Faulkner's termination should be

---

[2] Tennessee Code Annotated section 27-9-114 provides, in relevant part:

(a)(1)  Contested case hearings by civil service boards of a county or municipality which affect the employment status of a civil service employee shall be conducted in conformity with contested case procedures under the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, part 3.
. . .
(b)(1)  Judicial review of decisions by civil service boards of a county or municipality which affects the employment status of a county or city civil service employee shall be in conformity with the judicial review standards under the Uniform Administrative Procedures Act, § 4-5-322.

reviewed using the standard applicable to common law writs of certiorari. After reviewing the record, the trial court found ample evidence to support the Mayor's decision to terminate Officer Faulkner.

The trial court then went on to find that, "even assuming that Petitioner was a civil service employee and that the City of Bartlett had implemented a civil service system, Petitioner was not denied due process and that there was just cause to terminate her." The court addressed each of the grounds listed in the Uniform Administrative Procedures Act, finding that "there is substantial and material evidence in the record to support the Mayor's decision; that the Mayor did not act in excess of his authority or in violation of any constitutional or statutory provisions; that the Mayor did not utilize an unlawful procedure and his actions were not illegal, arbitrary or capricious; and that there was just cause to terminate Petitioner." Officer Faulkner timely filed a notice of appeal to this Court.

## II. ISSUE PRESENTED

On appeal, Officer Faulkner presents the following issue for review:

Whether the trial court erred in finding that the Appellant, Faulkner, was an employee-at-will and not entitled to have her job termination reviewed under the standards outlined in T.C.A. 27-9-114, applicable to public employees, when the written policies of Bartlett contained specific guarantees of due process of law.

For the following reasons, we affirm the decision of the chancery court.

## III. DISCUSSION

On appeal, Officer Faulkner claims that the trial court erred by reviewing her termination under the common law writ of certiorari rather than the Uniform Administrative Procedures Act pursuant to Tennessee Code Annotated section 27-9-114. Despite the trial court's explicit alternative finding that Officer Faulkner was not entitled to relief under the provisions of the Uniform Administrative Procedures Act because, among other things, "[she] was not denied due process," Officer Faulkner claims that the trial court did not genuinely consider her due process claim. On appeal, Officer Faulkner continues to assert that her due process rights were violated because the Mayor had prejudged her case.[3]

We do not find it necessary to address the parties' arguments regarding the applicability of Tennessee Code Annotated section 27-9-114 to employees of the City of Bartlett because, even assuming arguendo that the statute applied, we have determined that Officer Faulkner was not denied due process because she was an employee-at-will.

---

[3] We note that Officer Faulkner does not challenge the trial court's express findings that substantial and material evidence in the record supported the Mayor's decision; that the Mayor did not act in excess of his authority; and that the Mayor did not utilize an unlawful procedure or act illegally, arbitrarily or capriciously.

-4-

The Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of life, liberty, or property, without due process of law." The hallmark of property is an individual entitlement grounded in state law, which cannot be removed except "for cause." *Armstrong v. Tenn. Dep't of Veterans Affairs*, 959 S.W.2d 595, 598 (Tenn. Ct. App. 1997) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)). "To be entitled to procedural due process protection, a property interest must be more than a 'unilateral expectation' or an 'abstract need or desire.' It must be a 'legitimate claim of entitlement' to a specific benefit." *Rowe v. Bd. of Educ. of City of Chattanooga*, 938 S.W.2d 351, 354 (Tenn. 1996) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). "A protected property interest in employment does not arise under the Constitution itself, but stems from an independent source, such as state law or contract." *Ogburn v. Gas & Water Dep't, City of Clarksville*, No. 01A01-9702-CH-00056, 1997 WL 528812, at *4 (Tenn. Ct. App. M.S. Aug. 27, 1997) (citing *Bd. of Regents*, 408 U.S. at 577).

"Tennessee has long adhered to the employment-at-will doctrine in employment relationships not established or formalized by a contract for a definite term." *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002). Under the employment-at-will doctrine, both the employer and the employee are generally permitted, with certain exceptions,[4] to terminate the employment relationship "at any time for good cause, bad cause, or no cause." *Id.* (quoting *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 574 (Tenn. 1999)). The employment-at-will doctrine recognizes that employers should be free to make their own business decisions without undue court interference, and that employees may exercise their rights in the same way and refuse to work for a person or company for the same cause or want of cause. *Id.* at 858 (citations omitted).

In Tennessee, there is a presumption that an employee is employed at-will. *Lee v. City of LaVergne*, No. M2001-02098-COA-R3-CV, 2003 WL 1610831, at *2 (Tenn. Ct. App. Mar. 28, 2003); *King v. TFE, Inc.*, 15 S.W.3d 457, 460 (Tenn. Ct. App. 1999); *Thompson v. Telco, Inc.*, No. 01A01-9801-CH-00045, 1999 WL 548610, at *6 (Tenn. Ct. App. July 29, 1999); *Rose v. Tipton County Pub. Works Dep't*, 953 S.W.2d 690, 691-92 (Tenn. Ct. App. 1997). Obviously, an at-will employee does not have a legitimate entitlement to continued employment. An at-will employee has no entitlement to his or her position and therefore no property interest to be deprived of if he or she is summarily dismissed. *Lee*, 2003 WL 1610831, at *1 (citing *Whittaker v. Care-More, Inc.*, 621 S.W.2d 395 (Tenn. Ct. App. 1981)); *see also Williams v. Memphis Hous. Auth.*, No. 02A01-9608-CV-00190, 1997 WL 287645, at *4 (Tenn. Ct. App. W.S. June 2, 1997).

In this case, there is absolutely no evidence that Officer Faulkner was employed for a specific term, or that there was a formal contract of employment between her and the City of Bartlett. Nevertheless, Officer Faulkner claims that she was not an at-will employee. According to her brief, "It is [Officer] Faulkner's position that Bartlett, through its Charter and Personnel Manual, effectively created a civil service merit system assuring her of due process rights." The City Charter provides, in relevant part:

---

[4] Although there are exceptions to the power of employers to dismiss at-will employees, such as discrimination or retaliatory discharge, Officer Faulkner does not allege these causes of action.

-5-

Section 3: <u>Personnel System</u>
(a) Merit principle. The personnel system of the City of Bartlett shall be based upon the merit principle to assure optimal utilization of the human resources of the city. All appointments and promotions shall be based upon an objective evaluation of merit and fitness, using openly competitive selection procedures, examinations or other evidence of fitness.
(b) Personnel rules and regulations. The rules and regulations under which the personnel system of the City of Bartlett shall be governed shall be prepared by the mayor and shall become effective when adopted by the board. These rules and regulations may be amended from time to time and shall set forth personnel policies and procedures, including procedures for the handling of grievances prior to their appeal to the personnel board.

The City of Bartlett's Personnel Manual provides:

15.0 General Policy
It is the policy of the City of Bartlett to encourage employees to remain in the service of the City. All City employees are employees at will whose employment status is subject to alteration in accordance with the City Charter, Code of Ordinances, or these policies. The responsibility for terminating an employee lies with the Mayor.

Officer Faulkner's brief does not cite any other portions of the Personnel Manual. It simply alleges that "[a]n examination of Bartlett's written employment system fits clearly within the parameters" of a civil service system. Unfortunately, the record before us only contains selected pages of the City's Personnel Manual, but we find the following provisions relevant to the issue before us:

9.5  Standards of Cooperation
. . . When work habits, attitude, production, or personal conduct of an employee falls below a desirable standard, supervisors should point out the deficiency at the time it is observed. Warning in sufficient time for improvement should precede formal disciplinary action, but nothing in this section shall prevent immediate formal action whenever the interest of the City requires it.
. . . .
9.9  Obviously these rules cannot cover all aspects of conduct, but any conduct that falls below the traditional standards for employees of this City shall be subject to the same disciplinary actions, ranging from an oral reprimand to immediate discharge.
. . . .
12.00 Policy
. . . .
A.  Discipline
. . . In some instances immediate and/or severe disciplinary action may be justified, however the action to be taken depends on the seriousness of the incident and the whole pattern of the employee's past conduct and performance.

The Personnel Manual also establishes "Complaint and Grievance Procedures," which it describes as procedures "for the presentation and adjustment of misunderstandings and disagreements which arise between employees and their supervisors and to assure employees that their problems shall be considered fairly, rapidly, and without reprisals." Employees who have been employed less than twelve months cannot take advantage of the grievance procedures. If an employee's complaint cannot be resolved by his or her supervisor or department manager, the employee has a right to file a formal grievance. The Manual lists examples of persons who may file a grievance, including "[a] terminated employee who feels that the termination is unjust, unwarranted, or otherwise improper." The employee has the opportunity to present witnesses and exhibits at a hearing before the Grievance Review Board, and he or she has the right to be represented by an attorney. However, the Manual limits the authority of the Grievance Review Board as follows:

> The Grievance Review Board shall be a fact finding committee only and shall have no authority to make final decisions on the grievance, but will assemble only for the purpose of determining, without prejudice, all the facts on both sides of the grievance and recommend a disposition to the Mayor.

It is undisputed that the ultimate responsibility for terminating an employee remains with the Mayor.

We find nothing in the grievance procedure or any other provision of the Personnel Manual in the record before us that altered Officer Faulkner's at-will employment status. In *Lee*, 2003 WL 1610831, at *1-2, another police officer filed a petition for writ of certiorari after his employment was terminated, claiming that his due process rights were violated and citing his employer's personnel handbook. Despite the handbook's "elaborate grievance procedure for employer actions adverse to the employee," we found nothing in the handbook to overcome the presumption that the officer was employed at-will. *Id.* at *1. "The presumption that an employee is at-will must be overcome by specific language guaranteeing a definite term of employment." *Id.* at *2.

Officer Faulkner was not employed for a definite term, and nothing in the record before us required "just cause" before she could be terminated. Nothing in the Personnel Manual limited the City's right to terminate her to any set of enumerated reasons. Despite the grievance procedure discussed above, the Personnel Manual explicitly recognized that immediate formal disciplinary action, including immediate discharge, was permissible. Because Officer Faulkner was an employee at-will, she had no protected property interest that would give rise to due process considerations. *See Miller v. City of Murfreesboro*, 122 S.W.3d 766, 775 (Tenn. Ct. App. 2003); *Lee*, 2003 WL 1610831, at *1-2. "Public employees without tenure or statutory civil service protection are employees at will and erroneous reasons or lack of reasons for dismissal afford no basis for reinstatement." *Kerr v. Cross*, Nos. 40 and 41, 1986 WL 6611, at *1 (Tenn. Ct. App. E.S. June 13, 1986) (citing *State v. City of Memphis*, 452 S.W.2d 346 (Tenn. 1970)); *see also Watson v. City of LaVergne*, No. M2006-00351-COA-R3-CV, 2007 WL 1341767, at *3 (Tenn. Ct. App. May 7, 2007) (explaining that the defendant-city was not required to provide any justification for its decision to terminate at-will employees). Officer Faulkner's claim that she was denied due process is without merit.

We note that Officer Faulkner's brief also mentioned a "General Order No. 37-01" as giving rise to her due process rights, and her brief provided an erroneous citation to the record for this document's location. The City of Bartlett noted in its brief that General Order No. 37-01 was not included in the appellate record. At oral argument, Officer Faulkner's attorney was specifically asked to provide the location in the record of General Order No. 37-01, and counsel again provided the same erroneous citation. Although we are under no duty to minutely search the record to verify unsupported allegations, **Long v. Long**, 957 S.W.2d 825, 828 (Tenn. Ct. App. 1997), we have searched the record for the document cited by Officer Faulkner to no avail. We cannot take judicial notice of materials simply appended to or included within briefs that are not properly made part of the record on appeal. **Willis v. Tenn. Dep't of Correction**, 113 S.W.3d 706, 713 n.6 (Tenn. 2003). Therefore, Officer Faulkner's argument regarding General Order No. 37-01 is waived.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to the appellant, Carey Faulkner, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.