# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 15, 2010 Session

## MICHAEL B. WOODS v. METROPOLITAN DEVELOPMENT AND HOUSING AUTHORITY BOARD OF COMMISSIONERS

### Appeal from the Chancery Court for Davidson County
### No. 09-288-I    Claudia Bonnyman, Chancellor

### No. M2010-00307-COA-R3-CV - Filed January 5, 2011

The petitioner, a former property manager for the Metropolitan Development and Housing Agency, was fired amid allegations that he had sexually harassed tenants and neglected his official duties by failing to properly prepare monthly reports. He appealed the termination of his employment to the Board of Commissioners of MDHA. The Board appointed a hearing officer who conducted a two-day hearing, following which the hearing officer found that the proof was insufficient to support a finding of sexual harassment and recommended that Petitioner be reinstated but demoted due to his failure to provide the required monthly reports. The Board subsequently rejected the recommendation and affirmed Petitioner's termination based on the risk of future negligent retention sexual harassment suits and the fact he was an at-will employee who could be fired without cause. Petitioner then filed this petition for a common law writ of certiorari, contending MDHA acted arbitrarily, capriciously and illegally because it did not have just cause to fire him and because the decision to terminate him was due to his refusal to waive his right to appeal. The trial court dismissed the petition, finding the Board did not act arbitrarily, capriciously, or illegally because Petitioner was an employee-at-will who could be fired without just cause. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

James B. Johnson, Nashville, Tennessee, for the appellant, Michael B. Woods.

Kathryn A. Stephenson and W. Justin Adams, Nashville, Tennessee, for the appellee, Metropolitan Development and Housing Agency Board of Commissioners.

# OPINION

Petitioner Michael B. Woods was employed by the Metropolitan Development and Housing Agency[1] ("MDHA") for 29 years in various positions. He served as the property manager for the James A. Cayce Homes from 1999 until 2005, when he was assigned to serve as manager of the Edgehill and I.W. Gernert Homes, where he worked until his termination in 2008. Each of these properties contained over 500 units and housed over 1500 residents.

In his capacity as property manager, Mr. Woods was required to interact closely with the residents, including, among other things, directing the admission process into the housing property as well as any transfers within the property, ensuring the residents paid the appropriate amount of rent based on income, performing home inspections, and acting as an advocate for residents with education, employment, and health service agencies. Beginning in December 2006, Mr. Woods and all MDHA property managers were required to prepare monthly reports detailing occupancy, evictions, accounts receivable, and any irregularities in rent payment or charges. These reports were submitted to their supervisors and ultimately to the Executive Director for the Department of Housing and Urban Development ("HUD"). The reports were required by federal law and were used to determine the amount of funding that MDHA was eligible to receive from HUD.

On September 15, 2008, Briana Davis, a resident of Edgehill Homes since 2002, contacted Mr. Woods's supervisors, Jerry Seay, the Director of Asset and Management for MDHA, and his assistant, Connie Martin, claiming that Mr. Woods had sexually harassed her on several different occasions beginning in May 2006. The most recent incident took place on September 13, 2008. Ms. Davis alleged that Mr. Woods told her he would allow her to transfer from a two-bedroom apartment to a three-bedroom apartment in exchange for sex, that he charged her extra rent when she refused to engage in sexual relations with him, and that he threatened to evict her unless she cooperated with him. She also alleged that Mr. Woods harassed many other residents, giving preferential treatment in the form of reduced rent or additional bedrooms to women who gave in to his requests and evicting those who refused.

MDHA hired attorney Clay Travis to investigate Ms. Davis's claims and to submit a report with findings and recommendations. Mr. Travis interviewed the following people: Ms. Davis; Ms. Davis's mother, Brenda Wilson; Mr. Woods; Jerry Brooks, the maintenance

---

[1] In the caption the defendant is identified as the Metropolitan Development and Housing Authority; the correct name is the Metropolitan Development and Housing Agency.

supervisor at Edgehill Homes; Police Sargent Robert Haught and Officer Randall Moore; Connie Martin, Mr. Woods's supervisor; Robert Settles and Danny Pentecost, former MDHA employees who worked under Mr. Woods; and Arthur Reese, the security director for MDHA. Although Mr. Travis's investigation focused on Ms. Davis's claims, several interviewees informed him of additional allegations of drug use by Mr. Woods as well as rumors that Mr. Woods had been involved with other female residents.

Mr. Travis submitted a written report in which he found that Ms. Davis's claims contained significant inconsistencies and that "reasonable minds could differ as to the veracity of [her] sexual harassment allegations." The foregoing notwithstanding, Mr. Travis further commented that "the pattern of behavior, rewarding of those who bow to his power, and intimations of sexual misconduct have followed Woods throughout his MDHA career, make [Ms. Davis's] accusations appear at least somewhat grounded in truth." Based upon all of the evidence he obtained, Mr. Travis concluded that, "it's more likely than not that Woods sexually harassed Brianna Davis in the methods and manner in which she alleged."

Following a review of Mr. Travis's report by administrators at MDHA, Steve Adams, assistant director for Human Resources at MDHA, notified Mr. Woods that charges were being brought against him and that Jerry Seay, Mr. Woods's supervisor, would conduct a "disciplinary conference" with Mr. Woods to discuss the charges. Specifically, Mr. Woods was charged with the following violations of MDHA personnel policy: "Disrespectful treatment of other employees or members of the public," "Dishonesty, immoral conduct, and conduct unbecoming of an employee of MDHA," "Harassment and Discrimination," and "Failure to perform official duties." The charge for failing to perform official duties pertained to Mr. Woods's frequent failure to provide the federally mandated monthly reports in a timely and accurate fashion. The disciplinary conference was scheduled for October 13, 2008.

On the morning of October 13, 2008, prior to the disciplinary conference, Ms. Egypt Williams, a former MDHA resident, came forward with allegations that, in 2000, Mr. Woods had made her so uncomfortable by questioning her about her personal life and contacting her at night and on the weekends that she felt she needed to move out of MDHA housing. She echoed Ms. Davis's allegations that women who engaged in sexual relations with Mr. Woods received preferential treatment. She said she did not report the behavior sooner because she did not think it was "very serious." She stated she came forward because she was attempting to get back into MDHA housing, but owed a significant amount of unpaid retroactive rent from her prior MDHA residence. She alleged that she could not have accrued the stated amount of retroactive rent and that Mr. Woods probably tacked the additional charges on out of spite when she told him not to call her anymore. It was later revealed that Ms. Williams

was evicted for failing to pay rent after her rent was increased following the discovery that she had substantial unreported income.

After meeting with Ms. Williams, Mr. Seay proceeded with the disciplinary conference, during which Mr. Seay discussed with Mr. Woods the report by Mr. Travis, the new allegations by Ms. Williams, and Mr. Woods's failure to complete the monthly reports. Mr. Seay also addressed an incident from 2002 involving Mr. Woods and a female resident that resulted in a sexual harassment lawsuit against MDHA, which was settled pursuant to a confidentiality agreement. Mr. Woods vehemently denied the harassment claims by Ms. Davis and Ms. Williams, and suggested that he was probably targeted for false accusations because of the past lawsuit.

Following the disciplinary conference, Mr. Seay submitted the recommendation to the Executive Director of MDHA, Phil Ryan, that Mr. Woods be terminated. Mr. Seay stated that his recommendation was based on the findings and conclusions in Mr. Travis's report and "the testimony of Ms. Williams and continued allegations and the fact that Mr. Woods seems to be [un]able to properly complete his monthly reports." Mr. Ryan approved Mr. Seay's recommendation and notified Mr. Woods that he was terminated as of October 16, 2008.

Mr. Woods immediately filed an appeal pursuant to MDHA's Personnel Policy, which provides that a terminated employee may appeal the decision of the Executive Director to the MDHA Board of Commissioners ("the Board"). Pursuant to the Personnel Policy, when an appeal is filed, the Board is required to appoint a hearing officer whose responsibility is to hold a hearing and make a recommendation to uphold, reject, or modify the Executive Director's decision; thereafter, the Board is to review the hearing officer's recommendation and make a final determination to accept, reject, or modify the decision of the hearing officer.

Attorney Bill Hubbard was appointed as the hearing officer. The evidentiary hearing was held on December 3 and 5, 2008. The following witnesses testified: Clint Maddox, a friend of Mr. Woods; Mr. Seay; Mr. Travis; and Mr. Woods. Ms. Davis did not testify and MDHA did not offer any witnesses or proof that Mr. Woods was guilty of sexual harassment. Instead, MDHA focused on the risk of a potential negligent retention lawsuit if Mr. Woods was not terminated.

At the conclusion of the hearing, Mr. Hubbard found that there was "insufficient evidence to support a finding that Mr. Woods engaged in consistent and persistent sexual misconduct towards Ms. Davis or other residents." He similarly found numerous inconsistencies in and lack of support for Ms. Williams's statement. Mr. Hubbard further concluded that the "veracity of the assertions in [Mr. Clay's] reports was successfully challenged." However, Mr. Hubbard also found that due to Mr. Woods's alleged prior

conduct MDHA could be at risk for a claim of negligent retention but that "MDHA can reasonably mount a successful defense," and that "the negligent retention should not be addressed by dismissal of Mr. Woods." Instead of terminating him, Mr. Hubbard recommended that Mr. Woods be demoted to a smaller housing unit due to his failure to provide the required monthly reports. Mr. Hubbard also recommended that MDHA implement various safeguards to guard against future harassment claims, such as requiring a witness when Mr. Woods interacts with residents.

In a meeting on February 3, 2009, the Personnel and Career Development Committee of the Board of Commissioners of MDHA ("the Committee") reviewed the report and recommendations of Mr. Hubbard. Following a discussion, the Committee made the following findings:

1. There has been a pattern of allegations of sexual harassment made against Mr. Woods.
2. The agency is concerned for the safety and well-being of its residents.
3. The agency is concerned about the risk of liability for the agency.
4. The agency is advised by counsel that Mr. Woods is an employee-at-will; furthermore, Mr. Woods does not have a property interest in his job with the agency.
5. For the last year and a half, Mr. Woods has consistently failed to properly submit reports required as a part of his job.
6. The suggestions of the hearing officer regarding the assignment of an employee chaperon for Mr. Woods are impractical.
7. The agency has been advised by counsel that they do not have to find that Mr. Woods engaged in sexual harassment in order to take this action.

Following a vote, the Committee made a recommendation to the full Board that it reject Mr. Hubbard's conclusions and recommendations and uphold Mr. Woods's termination. At a meeting of the Board on February 10, 2009, the Board adopted the findings and accepted the recommendations of the Committee and upheld the Executive Director's decision to terminate Mr. Woods's employment with MDHA.

The following day, February 11, 2009, Mr. Woods filed a petition for a writ of certiorari, pursuant to Tenn. Code Ann. § 27-8-101, in the Davidson County Chancery Court.[2] He alleged the Board acted arbitrarily because its decision to uphold his termination

_____

[2]We note that Mr. Woods amended his petition because the original petition failed to state that it was
(continued...)

was based on his refusal to waive his right to appeal his termination, and because there was insufficient evidence to conclude that he had sexually harassed Ms. Davis or Ms. Williams. He also asserted that the Board exceeded its jurisdiction by considering his failure to properly submit monthly reports during an investigation which concerned only harassment allegations. He requested reinstatement, backpay, lost benefits, and attorney's fees. The court granted the writ and the administrative record was filed with the court on May 4, 2009.

The case came on for hearing on January 5, 2010. The first issue considered by the trial court was whether Mr. Woods was an employee-at-will. The record revealed that Mr. Woods did not have a contract of employment for a term of employment with MDHA. Instead, Mr. Woods's rights and remedies were those stated in the MDHA Personnel Policy manual. The underlined disclaimer in the manual stated, "[The manual] does not create a contract for employment." Based upon this fact, the trial court held that Mr. Woods was an employee-at-will and he could be fired without a finding of just cause.

The trial court went on to find that, in the absence of an employment contract, the Board's decision was not arbitrary or capricious. The trial court also found that, "[a]lthough MDHA could not conclude that the Petitioner had sexually harassed residents, neither could MDHA conclude that he had not done so. . . . It is reasonable for MDHA, in the absence of discrimination or retaliation, to remove an employee whose behavior has been questioned and who has not otherwise been fulfilling his duties."

Based upon the above findings, the trial court dismissed the petition on January 7, 2010. Mr. Woods filed a timely appeal.

## ANALYSIS

Mr. Woods argues that the MDHA Personnel Policy Manual created a contract of employment that precluded MDHA from terminating his employment without just cause and that the Board wrongfully terminated his employment without just cause.

Conversely, MDHA argues that Mr. Woods was an employee-at-will, subject to termination for any lawful reason, or for no reason at all, and that the Board did not act arbitrarily or capriciously in firing Mr. Woods based on the risk of future liability for

---

[2](...continued)
the first application for the writ as required by Tenn. Code Ann. § 27-8-106.

negligent retention of an employee with a documented history of being accused of sexual harassment.[3]

## I.

In Tennessee, the presumption exists that employment for an indefinite term may be terminated at any time by the employer or the employee without cause. *Rose v. Tipton County Public Works Dept.*, 953 S.W.2d 690, 691-92 (Tenn. Ct. App. 1997). Nevertheless, this Court has recognized that even in the absence of a formal employment agreement, an employee manual can form a contract between the employee and the employer. *Smith v. Morris*, 778 S.W.2d 857, 858 (Tenn. Ct. App. 1988).

For an employee manual or handbook to constitute a contract it "must contain specific language showing the employer's intent to be bound by the handbook's provisions." *King v. TFE, Inc.*, 15 S.W.3d 457, 461 (Tenn. Ct. App. 1999) (citing *Smith*, 778 S.W.2d at 858 (Tenn. Ct. App. 1988)). In order to be considered part of an employment contract, the language in the handbook "'must be phrased in binding terms, interpreted in the context of the entire handbook, and read in conjunction with any other relevant material, such as an employment application.'" *Id.* (quoting *Claiborne v. Frito-Lay, Inc.*, 718 F. Supp. 1319, 1321 (E.D. Tenn. 1989).

The material provisions of the MDHA Personnel Policy Manual are not in dispute. The issue is whether MDHA's Personnel Policy Manual forms an employment contract that precludes MDHA from terminating Mr. Woods's employment without just cause.

The specific provisions on which Mr. Woods relies provide:

C. Types of Disciplinary Action. In the interest of good discipline, a department director may, with just cause and after proper notice and conference, take the following types of disciplinary action:
. . . .

> 3. Dismissal. A department director may dismiss (terminate) an employee from the Metropolitan Development and Housing Agency, which will become effective upon concurrence of the Executive Director.

---

[3]MDHA also contends that Mr. Woods waived his right to appellate consideration of whether the manual created a contractual right to be terminated only for just cause, because he failed to raise it in the trial court. However, the trial court's order specifically addresses this issue at length and we find it has not been waived.

D. Disciplinary Appeal Procedure. Any employee demoted for cause, suspended, or dismissed from MDHA may, in writing to the Assistant Director for Human Resources, appeal to have the action reviewed by the Board of Commissioners. . . . The Board of Commissioners will appoint a hearing officer after the written appeal has been filed with the Assistant Director for Human Resources. . . . After the hearing, the hearing officer will make his/her decision known to the employee and to the agency within thirty (30) calendar days from the date of the hearing, if possible. If the Board does not approve the hearing officer's decision it may modify or reverse it. The judgment of the Board will be final and binding.

Mr. Woods argues that these provisions are guarantees by MDHA, and became binding, contractual commitments when Mr. Woods appealed his termination. As support, Mr. Woods looks to *Ussery v. City of Columbia*, No. M2008-01113-COA-R3-CV, 2009 WL 1546382 (Tenn. Ct. App. June 1, 2009) (perm app. denied March 15, 2010). In *Ussery*, the Court held that the employee handbook created a contractual relationship between the employee and employer where the handbook guaranteed, in mandatory language, that each employee would receive an annual, written evaluation of their work, on their pay anniversary date. *Id.* at *8. The handbook also promised that all pay raises would be based on those evaluations. *Id.*

However, in *Ussery*, the Court distinguished between the 1984 version of the handbook and the 1997 version. *Id.* At *5. Although the 1997 version contained the same mandatory language regarding the annual evaluations, it also contained a disclaimer that provided in relevant part: "This handbook does not constitute a legal contract with the City." *Id.* at *5 n.3. The plaintiffs did not appeal the trial court's holding that the 1997 handbook did not constitute an employment contract; as such, the Court did not rule on it. However, the Court clearly relied on the absence of the disclaimer in the 1984 handbook to find a contract in the 1984 handbook. *Id.* ("Unlike the 1997 Handbook, the 1984 Handbook contains no language stating that the earlier handbook is not a contract."); *see also MacDougal v. Sears, Roebuck & Co.*, 624 F. Supp. 756, 759 (E.D. Tenn. 1985) ("Even where part of the manual may be considered to give rise to a definitive guarantee based on past practices of the company, a manual will not necessarily be treated as a contract if specific language within the manual disclaims certain guarantees."). Furthermore, the reservation of a "unilateral right" in favor of the Board to alter or amend the handbook contradicts an intent to be contractually bound by its provisions. *Flowers v. Memphis Housing Authority*, No. 51934 T.D., 1997 WL 327628, at *3 (Tenn. Ct. App. June 17, 1997) (citing *Claiborne*, 718 F. Supp. at 1319).

MDHA's Personnel and Policy Manual contains a disclaimer in similarly clear language. The disclaimer appears on the first page of the manual and is written conspicuously, in capital letters:

> THIS IS THE OFFICIAL MANUAL OF PERSONNEL POLICIES FOR THE METROPOLITAN DEVELOPMENT AND HOUSING AGENCY (MDHA). ITS PURPOSE IS TO ARRANGE FOR READY REFERENCE A REVIEW OF THE POLICIES, RELATIONSHIPS, AND PROCEDURES OF MDHA. IT IS INTENDED PRIMARILY AS A GUIDE FOR EMPLOYEES IN THE DISCHARGE OF THEIR DUTIES. **IT DOES NOT CREATE A CONTRACT FOR EMPLOYMENT AND MAY BE MODIFIED OR AMENDED AT ANY TIME BY ANY SPECIAL OR REGULAR MEETING OF THE BOARD OF COMMISSIONERS.**
>
> THE MANUAL OF PERSONNEL POLICIES AND THE BYLAWS OF MDHA MAY BE AMENDED BY ANY SPECIAL OR REGULAR MEETING OF THE BOARD OF COMMISSIONERS BY A SIMPLE MAJORITY OF SAID COMMISSIONERS, THERE BEING A QUORUM PRESENT.

The Personnel and Policy Manual further provides that the Board has the authority to modify or reverse the decision of the hearing officer.

Reading the provisions regarding the appeals process in conjunction with the disclaimer and the Board's unfettered discretion to reverse the decision of the hearing officer, it is clear that the MDHA Personnel and Policy Manual lacks specific language showing MDHA's intent to be bound to a contract. *See King*, 15 S.W.3d at 461. Therefore, the Manual did not create a contract of employment with Mr. Woods, meaning he was an at-will employee who could be terminated from MDHA without just cause. We, therefore, affirm the holding of the trial court that Mr. Woods was an at-will employee and could he fired without a finding of just cause.

## II.

We must now review the Board's decision to terminate Mr. Woods in light of our conclusion that he is an at-will employee who may be terminated without a finding of just cause.

We review the Board's decision to terminate Mr. Woods's employment in the context of the petition filed by Mr. Woods, a common-law writ of certiorari.

The scope of review afforded by a common-law writ of certiorari is extremely limited. Reviewing courts may grant relief only when the board or agency whose decision is being reviewed has exceeded its jurisdiction or has acted illegally, arbitrarily, or fraudulently.

Review under a common-law writ of certiorari does not extend to a redetermination of the facts found by the board or agency who decision is being reviewed. The courts may not (1) inquire into the intrinsic correctness of the decision, (2) reweigh the evidence, or (3) substitute their judgment for that of the board or agency. However, they may review the record solely to determine whether it contains any material evidence to support the decision because a decision without evidentiary support is an arbitrary one.

Ascertaining whether the record contains material evidence to support the board's or agency's decision is a question of law. For the purpose of this inquiry "material evidence" is relevant evidence that a reasonable person would accept as adequate to support a rational conclusion. The amount of material evidence required to support a board's or agency's decision must exceed a scintilla of evidence but may be less than a preponderance of the evidence.

*Leonard Plating Co. v. Metropolitan Gov't of Nashville and Davidson County,* 213 S.W.3d 898, 903-04 (Tenn. Ct. App. 2006) (internal citations omitted).

As stated in more detail earlier in this opinion, Steve Adams, Assistant Director for Human Resources at MDHA, notified Mr. Woods that charges were being brought against him and that Jerry Seay, Mr. Woods's supervisor, would conduct a "disciplinary conference" with Mr. Woods. In the disciplinary conference that followed, Mr. Seay discussed with Mr. Woods the investigative report by Clay Travis, the new allegations by Ms. Williams, and Mr. Woods's failure to complete the monthly reports. Following the conference, Mr. Seay submitted a recommendation to the Executive Director of MDHA that Mr. Woods be terminated.

When Mr. Woods appealed his termination, the Board appointed attorney Bill Hubbard to hold a hearing and make a recommendation to uphold, reject, or modify the Executive Director's decision. Following an evidentiary hearing, Mr. Hubbard found the evidence insufficient to support a finding that Mr. Woods engaged in consistent and persistent sexual misconduct towards Ms. Davis or other residents, and that the veracity of the assertions of sexual harassment was successfully challenged by Mr. Woods. Mr. Hubbard also found that MDHA could be at risk for a claim of negligent retention due to Mr. Woods's

alleged prior conduct. Based upon these findings, Mr. Hubbard recommended that Mr. Woods not be terminated but rather demoted due to his failure to provide the required monthly reports. He also recommended that MDHA implement various safeguards against future harassment claims, such as requiring a witness when Mr. Woods interacts with residents.

The Executive Director took exception to the hearing officer's findings and recommendations and submitted a recommendation to the Personnel and Career Development Committee of the Board of Commissioners of MDHA that the hearing officer's recommendation be rejected. In a meeting on February 3, 2009, the Personnel and Career Development Committee reviewed the report and recommendations of the hearing officer and the response and recommendation of the Executive Director. Following a discussion, the Committee made numerous findings, including that "[t]here has been a pattern of allegations of sexual harassment made against Mr. Woods"; "[t]he agency is concerned about the risk of liability for the agency"; "Mr. Woods has consistently failed to properly submit reports required as a part of his job"; and that "the assignment of an employee chaperon for Mr. Woods [is] impractical." Following a vote, the Committee made a recommendation to the full Board that it reject Mr. Hubbard's recommendations and uphold Mr. Woods's termination.

Following a meeting of the full Board, the Board adopted the recommendations of the Committee, rejected the recommendations of the hearing officer, and upheld the Executive Director's decision to terminate Mrs. Woods's employment with MDHA.

The Board's decision to terminate Mr. Woods was based on a finding by the Board that his continued employment posed a risk of liability for MDHA, and could affect the safety and well-being of MDHA residents. At the time of his termination, three residents had lodged formal complaints regarding Mr. Woods's inappropriate behavior, one of which resulted in a lawsuit against MDHA. Everyone who reviewed the allegations and the proof, including the hearing officer, concluded that MDHA could face a claim of negligent retention by continuing to employ Mr. Woods. Furthermore, Mr. Seay stated that, despite several warnings, Mr. Woods failed to complete his monthly reports in a timely and accurate fashion and, as a result, Mr. Seay was forced to spend his time correcting Mr. Woods's reports to avoid the risk of losing HUD funding. The Board indicated that it took this into consideration when terminating Mr. Woods.

As stated above, our scope of review in this appeal is extremely limited. We may only grant Mr. Woods's relief if we determine the MDHA Board exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently in terminating his employment. There is no evidence in this record to support a finding that the Board acted illegally or fraudulently. As for the issue of arbitrariness, with respect to at-will employees such as Mr. Woods, it is "difficult to show

arbitrariness" because their "employment could be terminated for any lawful reason, or for no reason at all." *Watson v. City of Lavergne*, No. M2006-00351-COA-R3-CV, 2007 WL 1341767, at *3 (Tenn. Ct. App. May 7, 2007). "Absent an independent violation of the law, such as unlawful discrimination," an administrative body does not act arbitrarily or capriciously when it terminates an at-will employee. *Id.* at *3-*4; *see also Polite v. MDHA*, No. M2007-02472-COA-R3-CV, 2008 WL 3982915, at *3 (Tenn. Ct. App. Aug. 26, 2008). This record contains no evidence of an independent violation of the law. Moreover, there is material evidence to support the Board's findings and decision to terminate Mr. Woods's employment. *See Leonard Plating Co.*, 213 S.W.3d at 903-04.

For the foregoing reasons, we find that the MDHA Board did not act arbitrarily, capriciously, or illegally by terminating Mr. Woods.

## CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Michael B. Woods.

_____
FRANK G. CLEMENT, JR., JUDGE

-12-