IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 5, 2013 Session

## DUFF L. BRUMLEY v. CITY OF CLEVELAND, TENNESSEE

**Appeal from the Circuit Court for Bradley County**
**No. V-10-908      W. Neil Thomas, III, Judge**

---

**No. E2012-00002-COA-R3-CV-FILED-APRIL 23, 2013**

---

A detective with the City of Cleveland filed a petition for common-law writ of certiorari with the Circuit Court, seeking review of the City Manager's ruling affirming the City's decision to terminate his employment. At the hearing before the trial court, the petitioner proffered new and additional evidence that was not presented to the City Manager. The trial court sustained the City's relevancy objection and allowed the petitioner to make an extensive offer of proof. We hold that the trial court did not abuse its discretion in excluding the new and additional evidence, that there is material evidence supporting the City Manager's decision, and that the City Manager did not act arbitrarily or capriciously in deciding to uphold the City's decision to fire the petitioner. We therefore affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J. and JOHN W. MCCLARTY, JJ., joined.

W. Gerald Tidwell, Jr., Chattanooga, Tennessee, for the appellant, Duff L. Brumley.

Emily A. Cleveland and Robert H. Watson, Jr., Knoxville, Tennessee, for the appellee, City of Cleveland, Tennessee.

**OPINION**

**I. Factual and Procedural Background**

From 1997 until 2010, Duff Brumley was employed as an officer for the Cleveland Police Department. In 2010, while working as a detective in the narcotics unit, Mr. Brumley was approached by two members of the 10th Judicial District Drug Task Force ("DTF"), who informed him of their suspicions that the DTF Director, Mike Hall, might be abusing prescription medications. Later, according to Mr. Brumley, a Criminal Court judge told him that Director Hall appeared to be under the influence while obtaining the judge's signature in chambers. Mr. Brumley decided to investigate the matter and obtained personal information, including the social security number and date of birth, for Director Hall and two other DTF agents through the Criminal Justice Portal database.

Mr. Brumley gave Director Hall's personal information to pharmacist Mike Birdwell, his friend and neighbor, and asked Mr. Birdwell to check the Prescription Monitoring Program ("PMP") database[1] to determine if Director Hall's prescription drug purchases were suspicious. Mr. Birdwell passed the information to two other pharmacists because he did not have access to a computer to check the PMP database. The pharmacists checked Director Hall's prescription drug purchase history and determined that it did not raise any suspicion of illegal activity. Mr. Birdwell supplied Mr. Brumley this information and according to Mr. Brumley, he then ended his investigation of Director Hall.

On June 22, 2010, District Attorney General R. Steven Bebb sent Cleveland Police Chief Wes Snyder a letter stating, *inter alia*, the following:

> Please be advised that we have become aware of an incident involving Detective Duff Brumley. It appears that Detective Brumley illegally instigated a search of the Patient Monitoring Database for information on Mike Hall, the Director of the 10[th] Judicial Drug Task Force. Detective Brumley's actions have been confirmed through an investigation by the Tennessee Bureau of Investigation.
>
> . . . .

---

[1]This database was created by the Tennessee General Assembly as part of the Controlled Substance Monitoring Act of 2002. *See* Tenn. Code Ann § 53-10-301 to -311. The parties and witnesses in this case referred to it as the "Prescription Monitoring Program Database" or "Patient Monitoring Database," and it is also known as the Controlled Substance Monitoring Database. *See* Tenn. Code Ann. § 53-10-304(a); Tenn. Comp. R. & Regs. 1140-11-.01 & .02. The legislature has provided that "[i]nformation sent to, contained in, and reported from the database in any format is confidential . . .." Tenn. Code Ann. § 53-10-306(a).

Please accept this letter as notice that from this date forward the District Attorney General's Office will not accept any case files for prosecution from Detective Brumley. . . . Please also accept this letter as a request that an internal investigation be commenced by the Cleveland Police Department into these matters as soon as possible.

On June 23, 2010, Chief Snyder assigned Detective Brian Pritchard to conduct an Internal Affairs ("IA") investigation of Mr. Brumley. Following the IA investigation, Det. Pritchard concluded that Mr. Brumley's actions violated Cleveland Police Department policies and state law. On August 17, 2010, Chief Snyder notified Mr. Brumley that his employment was terminated effective August 24, 2010. The City of Cleveland provided the following grounds for its termination decision: (1) Mr. Brumley's "failure to notify CID Lieutenant of [his] investigation of Mike Hall and failure to generate a departmental case number"; (2) misuse of the Criminal Justice portal to obtain the personal information of Mike Hall and three other persons, and in disclosing Mike Hall's personal information to Mike Birdwell; (3) violation of Tenn. Code Ann. § 39-16-404;[2] (4) violation of Tenn. Code Ann. § 53-10-306;[3] (5) his investigation of the DTF director was "outside [the] scope of his job" and "should have been forwarded to a higher authority, such as the TBI, DEA, FBI, or DA's office"; (6) failure to follow Cleveland Police Department policies; and (7) two letters from District Attorney General Bebb stating, among other things, that "Detective Brumley will not be called as a witness by the State of Tennessee in any criminal proceeding in this District" such that he "has no credibility with this Office."

Mr. Brumley appealed his employment termination by requesting a hearing before the City Manager in accordance with the City of Cleveland's employee grievance procedure. The appeal hearing took place before City Manager Janice Casteel on August 24, 2010. Mr. Brumley was represented by counsel at the appeal hearing. The primary participants during the appeal hearing were Chief Snyder and Det. Pritchard; Mr. Brumley declined to make a statement based on his counsel's advice. City Manager Casteel considered the statements

---

[2]Tennessee Code Annotated section 39-16-404 provides that "[a] public servant commits an offense who, by reason of information to which the public servant has access in the public servant's official capacity and that has not been made public, attains or aids another to attain a benefit."

[3]Tennessee Code Annotated section 53-10-306 provides that "[i]nformation sent to, contained in, and reported from the [Controlled Substance Monitoring] database in any format is confidential," and "[a]ny person who knowingly uses, releases, publishes, or otherwise makes available to any other person or entity any information submitted to, contained in, or obtained from the database for any purpose other than those specified in this part is guilty of a Class A misdemeanor." Tenn. Code Ann. § 53-10-306(a), (k)(2).

presented at the hearing and the documents contained in the submitted administrative record, including Det. Pritchard's IA investigation file. On August 30, 2010, the City Manager affirmed the decision to terminate Mr. Brumley's employment.

Mr. Brumley filed an application for writ of certiorari with the Circuit Court for Bradley County on October 27, 2010. The trial court conducted a hearing on November 17, 2011, at which Mr. Brumley proffered a substantial amount of new evidence not presented to or considered by City Manager Casteel during the administrative appeal hearing. The City of Cleveland objected to the additional evidence on the grounds that it was irrelevant and beyond the proper scope of the court's review under a common-law writ of certiorari. The trial court sustained the City's objection and allowed Mr. Brumley to make an offer of proof.[4] After reviewing the administrative record of the hearing before City Manager Casteel, the trial court entered an order finding that all of the grounds for termination were supported by material evidence except the allegation that Mr. Brumley violated Tennessee Code Annotated section 39-16-404, which provides that "[a] public servant commits an offense who, by reason of information to which the public servant has access in the public servant's official capacity and that has not been made public, attains or aids another to attain a benefit." The trial court affirmed the City Manager's decision upholding the City's decision to terminate Mr. Brumley's employment.

## II. Issue Presented

Mr. Brumley appeals, raising the issue of whether the trial court erred in refusing to admit his proffered evidence at his common-law certiorari hearing, which evidence was not presented to the City Manager during his earlier administrative appeal hearing.

## III. Standard of Review

In this appeal we review the trial court's decision denying Mr. Brumley relief upon his petition for writ of certiorari. The Tennessee Supreme Court, in *Heyne v. Nashville Board of Public Education*, 380 S.W.3d 715, 729 (Tenn. 2012), has recently examined the standard of review of a court's decision under common-law writ of certiorari and reaffirmed the longstanding principle that such a review is narrow and "extremely limited." *Woods v.*

---

[4]Although the trial court did not explicitly state that it sustained the City's objection and excluded the proffered evidence, it is clear from the court's comments at the hearing that this was its ruling. For instance, the trial court stated at the beginning of the hearing, "I think they're entitled to make an offer of proof so that . . . if it goes to the Court of Appeals, [it] will decide whether or not I should have admitted that proof." The trial court repeatedly referred to the proffered evidence as "an offer of proof" and, in its later order to supplement the record on appeal, specified that "these documents are included in the record on appeal *as an offer of proof only by the petitioner*." (Emphasis added).

*Metro. Dev. & Hous. Auth. Bd. of Comm'rs*, 345 S.W.3d 903, 911 (Tenn. Ct. App. 2011). The *Heyne* Court instructed that

> [t]he judicial review available under a common-law writ of certiorari is limited to determining whether the entity whose decision is being reviewed (1) exceeded its jurisdiction, (2) followed an unlawful procedure, (3) acted illegally, arbitrarily, or fraudulently, or (4) acted without material evidence to support its decision. *Harding Acad. v. Metropolitan Gov't of Nashville & Davidson Cnty.*, 222 S.W.3d at 363; *see also Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012). We have explicitly approved the use of the common-law writ of certiorari to provide judicial relief from (1) fundamentally illegal rulings, (2) proceedings inconsistent with essential legal requirements, (3) proceedings that effectively deny parties their day in court, (4) decisions that are beyond the decision-maker's authority, and (5) decisions that involve plain and palpable abuses of discretion. *State v. Lane*, 254 S.W.3d at 355 (quoting *Willis v. Tennessee Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003)). However, we have also held that:

> > the common law-writ [of certiorari] . . . may not be resorted to for the correction of technical or formal errors, not affecting jurisdiction or power, or for the correction of defects that are not radical, amounting to an illegality that is fundamental, as distinguished from an irregularity.

*State ex rel. McMorrow v. Hunt*, 137 Tenn. 243, 249, 192 S.W. 931, 933 (1917).

A common-law writ of certiorari proceeding does not empower the courts to redetermine the facts found by the entity whose decision is being reviewed. *Tennessee Waste Movers, Inc. v. Loudon Cnty.*, 160 S.W.3d 517, 520 n. 2 (Tenn. 2005); *Cooper v. Williamson Cnty. Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987). Accordingly, we have repeatedly cautioned that a common-law writ of certiorari does not authorize a reviewing court to evaluate the intrinsic correctness of a governmental entity's decision. *See, e.g., Stewart v. Schofield*, 368 S.W.3d at 465; *Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997). Similarly, we have noted that reviewing courts may not reweigh the evidence or substitute their judgment for the judgment of the entity whose decision is being reviewed. *See, e.g., State v. Lane*, 254 S.W.3d at 355 (quoting *Robinson v. Clement*, 65 S.W.3d at 635); *Harding Acad. v. Metropolitan Gov't of Nashville & Davidson Cnty.*, 222 S.W.3d at

363.

*Heyne*, 380 S.W.3d at 729.

This is not Mr. Brumley's first appeal of an application for writ of certiorari resulting from his dissatisfaction with an employment-related decision by the City of Cleveland. In 2010, Mr. Brumley was unhappy with the City's decision to require him to undergo 28 days of retraining to improve his interpersonal and communication skills, so he appealed the trial court's ruling affirming the City Manager's decision and raised the same issue as presented in this appeal. *See Brumley v. City of Cleveland*, No. E2010-00840-COA-R3-CV, 2011 WL 1326239 (Tenn. Ct. App. Apr. 7, 2011) ("*Brumley I*"). In *Brumley I*, this court stated, *inter alia*,

> We apply an abuse of discretion standard of review in determining whether or not the trial court erred in excluding the introduction of additional evidence in a writ of certiorari review. *Weaver v. Knox County Bd. of Zoning Appeals*, 122 S.W.3d 781, 784 (Tenn. Ct. App. 2003). "Generally, the admissibility of evidence is within the sound discretion of the trial court." *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). "The trial court's decision to admit or exclude evidence will be overturned on appeal only where there is an abuse of discretion." *Id.* "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). "Courts have limited the introduction of additional evidence to the question of whether the Board exceeded its jurisdiction or acted illegally, arbitrarily or capriciously." *Weaver*, 122 S.W.3d at 786 (quoting *Hemontolor v. Wilson County Bd. of Zoning Appeals*, 883 S.W.2d 613, 618 (Tenn. Ct. App. 1994)).

*Brumley I*, 2011 WL 132639 at *4. In addressing the issue of whether the trial court abused its discretion to exclude the evidence not presented to the City Manager, we are mindful of the well-established standard that "[a]ny additional evidence offered to the reviewing court is limited to the question of whether the agency exceeded its jurisdiction or acted fraudulently, illegally or arbitrarily." *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980).

## IV. Analysis

Mr. Brumley does not argue that the City Manager's action exceeded her jurisdiction

or that it was illegal. Although Mr. Brumley does argue that the additional evidence he attempted to introduce with the trial court demonstrates that the City Manager's action was "arbitrary," it is largely an attempt to persuade the trial court to reevaluate the merits of the City's decision and reach a different conclusion. We hold that the trial court properly declined the invitation to evaluate the intrinsic correctness of the City Manager's decision and did not abuse its discretion by excluding Mr. Brumley's proffered new and additional evidence. As we stated in *Brumley I,* "[e]xtrinsic evidence cannot be introduced to show that the administrative action was wrong . . . [t]he issue is not whether Brumley conducted a proper investigation, but rather whether the City Manager acted arbitrarily or capriciously." 2011 WL 1326239 at *5.

Mr. Brumley's offer of proof consisted of the following: (1) his own live testimony, including his recollection of the events surrounding his investigation of Director Hall; (2) the live testimony of six other witnesses, including pharmacist Birdwell, four former or current law enforcement officers, and the City Attorney; (3) the deposition testimony of Kim Harmon, a Tennessee Bureau of Investigation ("TBI") agent; (4) documentation from two earlier and generally unrelated criminal cases in which Mr. Brumley was involved as a witness; and (5) documentation from an earlier TBI investigation of Chief Snyder. Our review of the administrative record and the testimony in the offer of proof establishes that very few, if any, of the facts of Mr. Brumley's investigation that led to his termination are disputed. Mr. Brumley's argument is that his investigation was properly conducted and that he did nothing wrong or inappropriate. He therefore contends that the City should not have terminated his employment. For instance, in an effort to discredit the allegation that he should have informed his superior officer of his self-initiated investigation of Director Hall and should have opened a case file, Mr. Brumley presented the testimony of Matt Jenkins, a Cleveland police officer, and Abe Hayes, a retired Cleveland police officer, who each testified that it was not common practice for officers to open a case file and inform their superior officers of criminal investigations that are in the early preliminary stage.

Mr. Brumley also offered the deposition testimony of Kim Harmon, a TBI agent who trained other law enforcement agents to investigate prescription abuse cases. Agent Harmon testified that at the time Mr. Brumley conducted the investigation of Director Hall, the TBI was training agents that it was proper and legal to ask a pharmacist to check the PMP database to see if a person's prescription drug history raised any suspicion of criminal activity. Agent Harmon further testified that shortly after Mr. Brumley's investigation, however, it was determined that such an informal inquiry without a court order would be improper and unlawful. At the administrative appeal hearing before City Manager Casteel, Chief Snyder stated that neither Agent Harmon nor anyone else from the TBI had ever provided the Cleveland Police Department with any training regarding the PMP database. Agent Harmon's proffered testimony thus bears limited relevance to the issue of whether the

City Manager acted arbitrarily. Det. Pritchard testified at the administrative appeal hearing that "according to the Board of Pharmacy's attorney, you cannot ask a pharmacist or initiate conversation with a pharmacist to indulge or look into that database. It must be done by a court order signed by the DA and the judge."

Chief Snyder also testified at the administrative hearing that the two letters from District Attorney General Bebb, which were placed into the administrative record for City Manager Casteel's consideration, played a significant role in the decision to terminate Mr. Brumley's employment. General Bebb's June 22, 2010 letter to Chief Snyder stated in part that "from this date forward the District Attorney General's office will not accept any case files for prosecution from Detective Brumley." General Bebb's July 15, 2010 letter to Chief Snyder informed him as follows in pertinent part:

> Detective Brumley will not be called as a witness by the State of Tennessee in any criminal proceeding in this District. Detective Brumley has no credibility with this Office and as such will not be called to testify to anything under oath. . . This decision is based on the current investigation as well as prior documented instances of Detective Brumley's credibility being called into question, at both the state and federal levels.

No one from the District Attorney General's office was called to testify, either in the administrative hearing or the hearing before the trial court, to discuss or explain the "prior documented instances of Detective Brumley's credibility being called into question." Mr. Brumley argues that the prior instances are regarding two earlier criminal cases in which he was involved—the prosecution of Michael Younger at the state level, and of Tiffany H. Little at the federal level. Mr. Brumley proffered extensive portions of the records in these earlier cases in an attempt to show that his credibility was wrongly called into question by General Bebb. We conclude that this evidence is irrelevant to the pertinent question before the court, "whether the City Manager acted arbitrarily or capriciously." *Brumley I*, 2011 WL 1326239 at *5.

On appeal, Mr. Brumley complains that because he did not have the power to cause subpoenas to be issued to compel witnesses to attend his administrative hearing, he was unfairly denied the opportunity to present evidence. In its memorandum and order, the trial court addressed this argument as follows:

> [Mr. Brumley] has argued that he did not have the ability to subpoena witnesses to the hearing before Janice Casteel, that he was rushed to hearing and that because of the pendency of the possibility of a criminal action against [Mr. Brumley] he could not testify. All of these arguments raise issues of due

process regarding the manner in which the hearing before Janice Casteel was held. No such argument, however, appears in any pleading before the Court.

The City responds to Mr. Brumley's arguments by asserting that it "gave him an opportunity to present whatever evidence he wanted" and that he "never requested additional time to accommodate his need to procure these witnesses." The transcript of the administrative hearing reveals that Mr. Brumley never raised the issue of not being able to call a witness or present any additional proof. At the close of the hearing, the City Attorney asked Mr. Brumley's counsel, "did you want to give anything else to Ms. Casteel for her consideration?" Mr. Brumley's counsel responded with a request to obtain and include a copy of Mr. Brumley's job description, which the City provided and included in the record. Mr. Brumley never made a complaint, objection, or argument during the administrative hearing that he wanted to submit other additional proof in any form, and therefore he cannot now be heard to complain about the failure to offer any additional evidence.

The administrative record before the City Manager contains material evidence supporting her decision to uphold the termination of Mr. Brumley's employment, including, among other things, Chief Snyder's testimony that Mr. Brumley's investigation "was inappropriate and well out of any protocol of legitimate law enforcement activities," Det. Pritchard's testimony and his IA investigative file, and the District Attorney General's letters explaining that his office would accept no files for prosecution from then-Detective Brumley and that he "has no credibility with this Office." "'Material evidence' is relevant evidence that a reasonable person would accept as adequate to support a rational conclusion. The amount of material evidence required to support a board's or agency's decision must exceed a scintilla of evidence but may be less than a preponderance of the evidence." *Brumley I*, 2011 WL 1326239 at *6 (quoting *Leonard Plating Co. v. Metro. Gov't of Nashville & Davidson Cnty.*, 213 S.W.3d 898, 904 (Tenn. Ct. App. 2006)). As we stated in *Brumley I,*

> it is not our role to question the wisdom of the City Manager's decision. It is sufficient that the City Manager relied on material evidence. . . .
> As we have discussed, our review in this case is exceedingly narrow. We may not substitute our own judgment for that of the City Manager. Nothing in the record suggests that the City Manager was motivated by animus towards Brumley. . . . We agree with the Trial Court that the City Manager rendered a decision based on material evidence and did not act arbitrarily or capriciously.

## V. Conclusion

Regarding the instant action seeking judicial review, we conclude that the trial court

properly determined that the City Manager reached a decision based on material evidence and did not act arbitrarily or capriciously. The judgment of the trial court is affirmed, and this case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below. The costs on appeal are assessed against the Appellant, Duff L. Brumley, and his surety, for which execution may issue if necessary.

_____
THOMAS R. FRIERSON, II, JUDGE