IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 19, 2020 Session

**RICHARD MICHELHAUGH, ET AL. v. CONSOLIDATED NUCLEAR SECURITY, LLC**

**Appeal from the Circuit Court for Anderson County**
**No. B8LA0053       Donald Ray Elledge, Judge**

_____

**No. E2019-00361-COA-R3-CV**

_____

This appeal arises from a dispute over vacation benefits. The plaintiffs allege that their employer deprived them of earned vacation time when it changed its vacation policy. The plaintiffs moved for class certification, and the defendant filed a motion for summary judgment. After hearing both motions, the trial court dismissed the plaintiffs' complaint with prejudice and denied the motion for class certification. The plaintiffs appeal. We affirm the trial court's ruling.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ARNOLD B. GOLDIN, J., joined.

Gregory F. Coleman, Mark E. Silvey, and William A. Ladnier, Knoxville, Tennessee, for the appellants, Richard Michelhaugh, John D. Williams, Jeff Gardner, and Monty Goins.

John C. Burgin, Jr., and John E. Winters, Knoxville, Tennessee, and Kristi McKinney Stogsdill and Charles E. Young, Jr., Oak Ridge, Tennessee, for the appellee, Consolidated Nuclear Security, LLC.

**OPINION**

**I. BACKGROUND**

Consolidated Nuclear Security, LLC ("CNS") contracted with the Department of Energy ("DOE") to direct operations at the Y-12 facility in Oak Ridge, Tennessee. CNS became the Y-12 facility contractor on July 1, 2014, and it replaced the former DOE

contractor, Babcock & Wilcox Technical Services Y-12, LLC ("B&W"). All four plaintiffs–Richard Michelhaugh, John D. Williams, Jeff Gardner, and Monty Goins (collectively "Plaintiffs")–worked at the Y-12 facility for several years before the transition from B&W to CNS. Plaintiffs were "at will" B&W employees, and they became "at will" CNS employees on July 1, 2014.[1]

A B&W provision entitled Vacation Plan, Number Y11-Y114, Revision 12/13/12 (the "Vacation Plan") governed employees' 2014 vacation rights, and the interpretation of the Vacation Plan is the principal issue in this case. Section B of the Vacation Plan applied to employees with a Company Service Date ("CSD") before January 1, 1996, and it gave those salaried employees the right to receive all of their vacation time up-front at the start of each year. All four Plaintiffs worked at the Y-12 facility before 1996, and had a CSD before January 1, 1996. Accordingly, Section B of the Vacation Plan governed their vacation rights. Because vacation time vested on December 31 of each year, Plaintiffs had the ability to use their vacation time during the first week of the calendar year. However, employees hired after 1996 did not have this vacation benefit and were instead required to accrue vacation time incrementally throughout the calendar year.

From early March 2014 through June 2014 (the "Transition Period"), CNS provided prospective employees with information about the transition from B&W to CNS.[2] CNS created a transition website that included information about its plan to change from vacation time to a paid time off system ("PTO") beginning in January 2015. CNS also created an informational document entitled "2014-2015 Benefits Summary for Non-Bargained Employees" (the "Benefits Summary") and held informational sessions ("Benefits Sessions") to explain upcoming changes. CNS mailed copies of the Benefits Summary to prospective employees in early June 2014 and encouraged prospective employees to submit questions by e-mail. The Benefits Summary explained:

> Effective January 1, 2015, CNS employees will accrue Paid Time Off (PTO) hours every pay period based on years of service. PTO accrued hours can be used for vacation, sick leave and personal time off from work, and you can accrue up to 240 hours of PTO.

The CNS Human Resources Manager, Janet Hunt, spoke at the Benefits Sessions and explained the transition from vacation time to PTO. CNS submitted a video in which Ms. Hunt directly addressed whether CNS would continue the B&W practice of vesting the next calendar year's vacation on December 31 (for employees with a pre-1996 CSD). Ms. Hunt stated:

---

[1]Plaintiffs also worked at the Y-12 facility before B&W directed operations.
[2]Most prospective CNS employees were currently employed by B&W before the transition period.

- 2 -

PTO hours will begin to accrue each pay period as we move forward. So, I know many of you have been in a plan in the past where you received a kind of advance accrual at the beginning of the year. That will no longer be the case. So, beginning with the 2015 accruals, then you will receive an accrual per pay period so hours will be added to your bank every time you receive a pay check. So that will build throughout the year.

Three Plaintiffs attended a session in which Ms. Hunt made similar statements about discontinuing the practice of advancing vacation time.[3] She stated that any changes to the Vacation Plan would not be effective until January 1, 2015, and Plaintiffs now argue that this made them to believe they would still receive all of their 2015 vacation time in advance on December 31, 2014.

CNS mailed offers of employment to prospective employees starting on June 2, 2014. The offer letters required all employees to read and accept CNS's Terms and Conditions of Employment. The document stated that "CNS adheres to the doctrine of employment at will," and, except for "at will" employment, "other terms of employment, policies, or procedures may exist and be changed from time to time." All four Plaintiffs accepted CNS's offers of employment on or before the June 9, 2014, deadline and became CNS employees on July 1, 2014.

CNS initially continued the existing Vacation Plan without change. However, on December 11, 2014, CNS formally issued Standing Order SO-Y-12-15-2007 (the "Standing Order"), which eliminated Section B of the Vacation Plan. CNS asserts that the Standing Order was issued in order to reconcile the Vacation Plan with the new CNS PTO policy that would begin on January 1, 2015. Plaintiffs and CNS agree that the Standing Order took effect before December 31, 2014, when, under the Vacation Plan, Plaintiff's "next calendar year's vacation" would have otherwise "vested." The CNS website explained the impact of the change:

Q: What happens to my 2014 accrued vacation?

A: Accrued vacation hours in your "bank" as of December 31, 2014, up to a maximum of 240 hours, will be carried over to your CNS PTO account. Accrued hours over 240 will be paid out as soon as administratively possible.

Plaintiffs claim that this standing order unexpectedly eliminated vacation benefits

---

[3]Michelhaugh, Williams, and Goins each attended a session. Gardner was aware of but did not attend any of the sessions.

that they had earned by working in 2014. CNS argues that the standing order did not eliminate Plaintiffs' vacation time; it only changed the timeline under which they received their 2015 PTO.[4] CNS asserts that the advance accrual system of Section B of the Vacation Plan gave Plaintiffs access to all of the coming year's vacation time before that calendar year actually started (it was always awarded on December 31). Thus, eliminating Section B only ended the advance accrual system. Under CNS's interpretation of the Vacation Plan, Section B gave Plaintiffs a benefit that was reserved for long standing facility employees. Employees with CSDs before 1996 did not actually *earn* vacation time by working throughout the previous calendar year. Instead, their former employer[5] advanced all of their vacation time without requiring them to first *earn* that vacation.

Plaintiffs take the opposite position and argue that Section B did not create an advance accrual system. They contend that vacation time in any given calendar year was always *earned* by working throughout the previous year; vacation time was not awarded in advance. Under their interpretation of the plan, an employee earns vacation time by working for an entire year, the vacation time is collectively awarded on December 31 of that year (the year in which it was allegedly earned), but it cannot be used until the following calendar year.

The relevant provision of the Vacation Plan states:

> Vested Rights to Vacation Eligibility for Salaried Employees:
> A salaried employee has vested rights to next calendar year's vacation if all of the following are applicable:
>
> (1) the salaried employee was hired prior to January 1, 1996, or was reinstated on or after January 1, 1996, with immediate restoration of prior service which results in an adjusted company service date of December 31, 1995, or earlier;
>
> (2) the salaried employee has completed one year of company service credit; and
>
> (3) the salaried employee was on the payroll of the company on December 31st.

---

[4]Note that through the end of 2014 vacation benefits were referred to as "vacation time." Beginning in 2015, vacation time was called "PTO" per CNS's new policy.

[5]B&W adopted the Vacation Plan from the previous facility contractor and, much like CNS, amended the plan as needed. Accordingly, there were several amendments to the Vacation Plan through the years, but each facility contractor gave employees hired before 1996 the advance accrual benefit.

Appendix B to the Vacation Plan explained that employees with CSDs before 1996 had a "vested vacation for next CY [calendar year] on 12/31 of previous CY." The Vacation Plan did not use the word "earned" in any sentence applicable to an employee with a CSD before January 1, 1996. Plaintiffs admitted that Part 1, Section B of the Vacation Plan never used the words "accrued" or "earned."

In August 2015, Plaintiffs Michelhaugh and Williams filed their original complaint against CNS on behalf of themselves and others similarly situated. CNS moved to dismiss, the trial court granted the motion, and Plaintiffs appealed. We overturned the dismissal and remanded the case for further proceedings.[6] The Tennessee Supreme Court denied CNS's application to appeal.[7] On remand, the two original Plaintiffs–Michelhaugh and Williams–and CNS agreed to a pre-trial scheduling order that required any motion for class certification to be filed by September 22, 2017, 180 days before the March 21, 2018, trial date. Plaintiffs did not file a motion for class certification in *Michelhaugh I*. On November 7, 2017, Plaintiffs voluntarily dismissed their claims without prejudice.

The original Plaintiffs filed the current action on April 11, 2018, and two additional Plaintiffs, Gardner and Goins, joined the suit.[8] The parties conducted discovery, and Plaintiffs moved for class certification on August 24, 2018. CNS opposed the motion for class certification and filed its motion for summary judgment on October 2, 2018. The trial court set both motions for a hearing scheduled on January 25, 2019. The trial court extensively questioned both counsel and quoted from our decision in *Michelhaugh I*.

After the hearing, the trial court issued a ruling in which it granted CNS's motion for summary judgment, dismissed the Plaintiffs' complaint with prejudice, and denied the Plaintiffs' motion for class certification. The court determined that the four Plaintiffs, and any putative class members, were not deprived of any earned or vested vacation when CNS issued the Standing Order that eliminated Part B of the Vacation Plan on December 11, 2014. That document only operated prospectively. The claims of Plaintiffs Gardner and Goins–and any claims that could have been asserted by putative class members–were dismissed with prejudice as untimely.[9] The claims of Plaintiffs Michelhaugh and Williams were also dismissed with prejudice, and the motion for class certification was denied as moot. The court further determined that Plaintiffs failed to comply with Rule 56.03 of the

---

[6]*Michelhaugh v. Consol. Nuclear Sec., LLC*, No. E2016-01075-COA-R3-CV (Tenn. Ct. App. Nov. 28, 2016 ("*Michelhaugh I*")).

[7]*Michelhaugh v. Consol. Nuclear Sec., LLC*, No. E2016-01075-SC-R11-CV (Mar. 9, 2017) (designated "Not for Citation").

[8]Plaintiffs Gardner and Goins never moved to become parties in *Michelhaugh I*.

[9]The trial court referred to the holding in *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 35 (Tenn. 2007), in which the Tennessee Supreme Court refrained from adopting the doctrine of class action tolling. In light of that ruling, the trial court found that Plaintiffs Gardner and Goins, and any other putative class members, could not rely on the doctrine of class action tolling.

Tennessee Rules of Civil Procedure because they did not provide specific citations to record evidence to support their dispute(s) of CNS's statement of material facts.[10]

A final order was entered on March 19, 2019. Plaintiffs thereafter timely filed this appeal.

## II. ISSUES

We restate the issues raised as follows:

> 1. Whether the trial court erred in finding that Plaintiffs failed to comply with Rule 56 of the Tennessee Rules of Civil Procedure.

> 2. Whether the trial court erred in finding that the doctrine of class action tolling did not apply, thereby rendering the claims of Plaintiff Gardner and Goins, along with those of other putative class members, untimely.

> 3. Whether the trial court erred in granting summary judgment in favor of CNS.

## III. STANDARD OF REVIEW

This case was decided by summary judgment, which is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013). We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Id.* In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Rye*, 477 S.W.3d at 250 (citing *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013); *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

Because Plaintiffs argue that the trial court misapplied Rule 56.03 of the Tennessee Rules of Civil Procedure, the standard of review with regard to that issue is abuse of discretion. In *Owens v. Bristol Motor Speedway, Inc.*, we held that we review a trial court's

---

[10]Several of Plaintiffs' responses only restated what the Plaintiffs' "contended," which also failed to comply with Rule 56.06 of the Tennessee Rules of Civil Procedure.

enforcement of Rule 56.03 for an abuse of discretion. 77 S.W.3d 771, 774-775 (Tenn. Ct. App. 2001); *see also Holland v. City of Memphis*, 125 S.W.3d 425, 428-429 (Tenn. Ct. App. 2003).

## IV. DISCUSSION

### Entitlement to Summary Judgment

To prevail in their suit, Plaintiffs must establish that CNS deprived its employees of earned vacation compensation when it eliminated Section B of the Vacation Plan. An essential element of such claim is that the compensation in question was actually *earned* during the period at issue, 2014. Since Section B of the Vacation Plan governed Plaintiffs' 2014 vacation rights, they must demonstrate that–under Section B and past practices– employees did in fact *earn* their 2015 vacation time by working during 2014.

Plaintiffs contend that Section B of the Vacation Plan supports their argument and demonstrates that employees were in fact earning the following year's vacation time by working in the preceding year. However, this argument is based on their interpretation of Vacation Plan rather than the plain language of Section B and corresponding documents. CNS relies on the plain language of Section B, arguing that it does not support Plaintiffs' argument or indicate that employees earned 2015's vacation time by working in 2014. Plaintiffs argue that, in light of the parties' disagreement as to the meaning of Section B, there is a genuine issue of material fact that must be submitted to a jury for resolution.

Summary judgment is appropriate when the moving party demonstrates that the evidence is insufficient to establish an essential element of the nonmoving party's claim. Rule 56.03 requires the party seeking summary judgment to provide a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Tenn. R. Civ. P. 56.03. Each fact must be set forth in a separate, numbered paragraph along with a specific citation to the record. *Id*. The nonmoving party must file a response to each fact and either (1) agree that the fact is undisputed; (2) agree that the fact is undisputed for the purposes of the motion; or (3) demonstrate with a specific citation to the record that the fact is disputed. *Id*. The nonmoving party may also provide additional facts to which the nonmoving party contends there exists a genuine issue to be tried. *Id*. Each such fact should be set forth in a separate, numbered paragraph with specific citations to the record. *Id*.

The record before us reveals that CNS is entitled to summary judgment because Plaintiffs failed to establish–by reference to facts and record evidence–that employees *earned* 2015 vacation compensation by working in 2014. Plaintiffs repeatedly assert that the Vacation Plan itself supports their argument, but they failed to cite to any specific language that justifies their position or their interpretation of Section B. The plain language of Section B does not support their argument, and Plaintiffs did not provide additional facts

to establish that employees did in fact *earn* vacation time. Because Plaintiffs failed to establish an essential element of their deprivation of earned vacation compensation claim, the trial court correctly determined that CNS was entitled to summary judgment as a matter of law.

A disagreement over specific facts is different from a disagreement over the *interpretation* of a document. The Vacation Plan and corresponding documents were submitted into evidence, and both parties agree that the documents were authentic. Further, Plaintiffs admitted under oath that the relevant parts of the Vacation Plan never used the words "earned" or "accrued." Plaintiffs also admitted that CNS changed the Vacation Plan before Plaintiffs' "next calendar year's vacation" would have vested on December 31 under the Vacation Plan's previous terms. They do not dispute the plain language of the Vacation Plan, but nonetheless argue for an alternative interpretation that supports their position. After searching the record, it is clear that Plaintiffs failed to provide the trial court with any citations that could have established that they actually *earned* vacation time. Further, Plaintiffs failed to demonstrate that a genuine dispute of material fact exists. Citing to your own legal arguments–or arguing for an alternative interpretation of a document–is not sufficient to establish a genuine dispute of material fact. *State v. Trotter*, No. E2018-00390-COA-R3-CV, 2019 WL 354969, at *9 (Tenn. Ct. App. Jan. 28, 2019). Plaintiffs failed to establish an essential element of their claim, and they failed to competently dispute CNS's statement of facts. Accordingly, we affirm the trial court's determination and find that CNS is entitled to summary judgment as a matter of law.

### Trial Court's Enforcement of Rule 56.03

Plaintiffs argue the trial court misapplied Rule 56.03 of the Tennessee Rules of Civil Procedure by requiring "strict" and "rigid" adherence to the rule. Plaintiffs assert that the trial court should have applied a "more relaxed reading" instead of requiring record citations to the "page in the record containing those facts." They argue as follows: "[R]edundant citations–as Judge Elledge determined were necessary under his interpretation of Rule 56.03–would have done nothing to actually assist the trial court in ascertaining whether these material issues of fact existed." We cannot agree. The trial court specifically stated to Plaintiffs' counsel, "I've read this, but in order to compare it and look at it, I need something, some type of reference, to that." Plaintiffs failed to provide the trial court with proper citations, and they failed to move for a continuance to fix their errors.

Plaintiffs contend that they supported their responses with cross-references to "expansive explanatory arguments." However, on closer review, several of their cross-references repeatedly state, "See generally Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment." Since Plaintiffs repeatedly used generalizations instead of providing specific pages or record citations, their cross-references failed to satisfy Rule 56.03's specificity requirements.

Trial courts have the authority to enforce the Tennessee Rules of Civil Procedure. The trial court could have, in its discretion, waived complete compliance with Rule 56.03, but it was *not* required to do so. Plaintiffs failed to comply with the rule at issue and repeatedly failed to support their response to CNS's statement of undisputed material facts with proper citations to record evidence. *Owens*, 77 S.W.3d at 774-775; *see also Holland*, 125 S.W.3d at 428-429. Thus, the trial court acted within its discretion when it determined that Plaintiffs' response paragraphs "4, 10, 11, 45, 48, 53, 56, 59, 60, 61, 69, 71 through 78, 81, 82, 87 through 90" failed to comply with Rule 56.03 or otherwise failed to demonstrate the existence of a disputed material fact. For the reasons set forth above, we affirm the trial court's ruling.

### Deprivation of Earned Compensation Claim

Plaintiffs argue they were deprived of earned vacation compensation when CNS issued the Standing Order that formally eliminated Section B of the Vacation Plan. Reviewing the record before us, the evidence shows that CNS had the right to prospectively change its Vacation Plan, and it did so before Plaintiffs' 2015 vacation vested, accrued, or was earned. CNS informed prospective employees that the Vacation Plan would change beginning in 2015, and Plaintiffs were notified about these changes before they accepted positions as "at will" employees. Plaintiffs were never deprived of their 2015 vacation benefits because they began accruing PTO incrementally in January 2015.

In Tennessee, the agreement between an employer and its employee determines whether an employee's compensation includes vacation time, when that vacation accrues, and whether an employee is entitled to vacation upon termination. *Phillips v. Memphis Furn. Mfg. Co.*, 573 S.W.2d 493, 494-495 (Tenn. Ct. App. 1978); accord *Hance v. United Family Life Ins. Co.*, 725 S.W.2d 680, 682 (Tenn. Ct. App. 1986). How and when employees earn vacation time is purely a matter of agreement. *Eades v. Bristol Mem. Hosp.*, No. 72, 1986 WL 10924 at *4 (Tenn.1986); Tenn. Code Ann.§ 50-2-103(a)(4). The Tennessee Supreme Court has held that an employer has no obligation to provide an employee with paid time off "in the absence of its agreement to." *Id.* Further, at will employees–such as Plaintiffs–have no contractual right to demand that an employer continue any past practice. *See Cummings, Inc. v. Dorgan*, 320 S.W.3d 316, 335 (Tenn. Ct. App. 2009); *Rose v. Tipton Cnty. Pub. Works Dep't*, 953 S.W.2d 690, 694 (Tenn. Ct. App. 1997).

In order to analyze the agreement between Plaintiffs and CNS, we must first understand Plaintiffs' agreement with B&W and other past DOE contractors. Under past versions of the Vacation Plan, employees would earn vacation time incrementally during their first year of employment. Once an employee had worked at the Y-12 facility for one year–and they received their time off for that year–they would begin receiving advance accrual of the next year's vacation. The advance accrual was awarded on December 31 to be used in the following calendar year. Under this system, B&W advanced Plaintiffs' entire

2014 vacation on December 31, 2013. Thus, when CNS became the DOE contractor in mid-2014, Plaintiffs already had access to all of their 2014 vacation benefits.

Because CNS replaced B&W in the middle of the calendar year, it agreed to temporarily adopt the Vacation Plan for the remainder of 2014. However, CNS informed all prospective employees that the Vacation Plan would change beginning in 2015 and that past practices, such as advance accrual of vacation time, would be eliminated. CNS never told Plaintiffs that they would earn vacation time by working during the remainder of 2014, and CNS did not agree to pay Plaintiffs' "next calendar year's vacation" upfront on December 31, 2014. Nevertheless, this dispute arose when, consistent with its previous statements, CNS eliminated Section B of the Vacation Plan.

Section B stated that an employee hired before 1996 "has vested rights to the next calendar year's vacation" if the employee is "on the payroll" as of December 31. Under CNS's interpretation of the Vacation Plan, no vacation vests (or accrues or is earned) until December 31, and the vacation time that vests on December 31 is "the next calendar year's vacation." CNS argues that Section B annually *advanced* the following calendar year's vacation time without first requiring employees to *earn* that vacation time. CNS takes the position that employees were never *earning* next year's vacation by working during the previous calendar year; they were simply awarded all of their vacation time upfront. Thus, if Plaintiffs were "earning" anything by working during 2014, the vacation time that they earned was undoubtedly the vacation time that B&W preemptively advanced to them on January 31, 2013. CNS argues that Section B's advance accrual system created a benefit that was reserved for long-standing facility employees, and it allowed them to take paid vacation leave during the month of January.[11] Reviewing the relevant portions of the Vacation Plan and past practices, we agree with CNS's interpretation of the Vacation Plan.

Under Tennessee law, CNS had the right to prospectively change its Vacation Plan, and it did so when it issued the Standing Order that eliminated Section B. CNS did not deprive Plaintiffs of any vested vacation rights or earned compensation because the change happened before any of Plaintiffs' 2015 vacation time would have otherwise vested on December 31. If CNS had not issued the Standing Order, then Plaintiffs would have received double vacation time in a single calendar year.[12] To avoid this result, CNS had to eliminate Section B before December 31, and it did not matter whether that change happened on July 1 or December 30, so long as Section B was eliminated *before* Plaintiffs' vacation time vested. The Standing Order satisfied this requirement because it was issued

---

[11]Since Section B only applied to employees with a CSD before 1996, new hires and the majority of facility employees were not given this same benefit. When Section B was eliminated, it ended this practice and meant that employees with a CSD before 1996 would have to accrue vacation time incrementally, in the same manner as post-1996 employees.

[12]Under the unamended version of the Vacation Plan, an entire year of vacation time would have vested on December 31, 2014. Then, under the new PTO plan, which took effect in January 2015, Plaintiffs would accrue vacation time incrementally at the end of each pay period.

on December 11, 2014, and went into effect that same day. When CNS ended the advance accrual system and implemented its PTO system, Plaintiffs began receiving their PTO incrementally rather than in one lump-sum distribution at the start of the calendar year. However, this change did not *deprive* Plaintiffs of any vacation benefits or PTO.

Plaintiffs' entire claim is based on their flawed interpretation of the Vacation Plan. Specifically, they rely on a single clause in Section B to argue their position: in order to have vested vacation rights the salaried employee must be on the company payroll on December 31. They argue that employees *earned* vacation time by working for an entire calendar year, the vacation time was collectively awarded on December 31 of that same year, and it could only be used in the following year. Under Plaintiffs' interpretation of the Vacation Plan, employees must forfeit all of their earned vacation benefits if their employment ends any time before December 31. Further, employees must work 365 days before they can actually use any of their earned vacation time. This type of vacation plan is both uncommon and unrealistic. Under this interpretation of the Vacation Plan, employees hired after 1996 CSDs have historically been treated better than the employees with more seniority.[13] This result simply does not square with logic or past practices.

Plaintiffs' interpretation of the Vacation Plan contradicts the plain language of Section B and corresponding documents, the Benefits Meetings, past practices, and other facts in the record. CNS never deprived Plaintiffs of any earned vacation compensation because there is no evidence that Plaintiffs earned 2015's vacation time by working in 2014. Because Plaintiffs received their 2015 vacation time/PTO as it accrued incrementally throughout 2015, finding in their favor would result in a double recovery that cannot be allowed. For the reasons stated, we affirm the trial court's determination and find that CNS had the right to prospectively change its Vacation Plan, it did so before any of Plaintiffs' 2015 Vacation Benefits vested, and the change did not deprive Plaintiffs of any earned vacation compensation.

## Misrepresentation Claim

Plaintiffs argue that statements Ms. Hunt made during the Benefits Meetings led them to believe that they would still receive an advance accrual of their 2015 vacation benefits on December 31, 2014. In particular, Ms. Hunt stated, "I just wanted to reiterate these changes are effective January 1, 2015, as moving to a PTO policy, so your vacation will stay in effect as of July 1 through the end of the year 2014." They contend this statement suggested that, since the new policy would not take effect until 2015, they would

---

[13]Newly hired employees did not have to work an entire year before they received any vacation benefits or PTO. It is not logical to think that long-term employees would have been held to more cumbersome standards.

still receive an advance accrual of their entire 2015 vacation on December 31, 2014. This Court has addressed the issue of misrepresentation in the workplace in past cases:

> In commercial transactions the law has recognized a less stringent standard of liability for fraudulent misrepresentations than the common law action for deceit. One who, in the course of his business, profession, or employment, or during a transaction in which he had a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon such information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. This standard of liability substitutes a reasonable care standard for the common law scienter requirement. In other words, in business transactions, a defendant can be held liable for negligent misrepresentations.

*Alley v. Quebecor World Kingsport, Inc.*, 182 S.W.3d 300, 303 (Tenn. Ct. App. 2005) citing to *Holt v. American Progressive Life Ins. Co.*, 731 S.W.2d 923, 927 (Tenn. Ct. App. 1987).

On the one hand, the Standing Order could be interpreted as contradicting Ms. Hunt's statements and the terms under which Plaintiffs accepted their employment offers. However, on closer review, Ms. Hunt's statement was not a misrepresentation. CNS and Ms. Hunt exercised reasonable care in communicating information to Plaintiffs and other potential employees, and there is no evidence that any of the statements were intended to mislead potential employees. In the context of the Benefits Meetings, the statement was generally directed at the entire group of attendees and not just Plaintiffs or employees with CSDs before 1996. In all likelihood, a majority of attendees had CSDs after 1996, and these employees did not have the benefit of Section B's advance accrual system. In this general context, Ms. Hunt's statement simply meant that most employees would continue accruing vacation time incrementally through the remainder of 2014.[14]

CNS notified Plaintiffs that the advance accrual system would end, it mailed them letters explaining these changes, and it encouraged Plaintiffs to send in questions via email. In light of these facts, Plaintiffs had no reason to believe that they would still receive an advance accrual of their 2015 vacation time on December 31, 2014. Plaintiffs were responsible for understanding the terms of their employment, and reviewing the benefits summary before accepting employment with CNS.

---

[14]The portions of Vacation Plan that applied to post-1996 employees–the majority of the workforce and prospective employees–remained intact through the close of 2014 and were not affected by the Standing Order or the elimination of Part B.

Even if Ms. Hunt's statements are construed as misleading, they are not material to Plaintiffs' deprivation of earned compensation claim. "The issues central to the Court's evaluation of a motion for summary judgment are whether a factual dispute exists, whether the disputed fact is material to the outcome of the case, and whether the disputed fact creates a genuine issue for trial." *Cox v. Tennessee Farmers Mut. Ins. Co.*, 297 S.W.3d 237, 245 (Tenn. Ct. App. 2009). In this case, what matters is whether Plaintiffs earned 2015 vacation time by working in 2014, and whether CNS deprived them of that vacation time. Ms. Hunt's statements are not material because they have no bearing on that issue. The Vacation Plan itself is what matters, and the parties do not dispute the text of that document. Ms. Hunt's statements may have been material to a misrepresentation claim, but Plaintiffs' complaint asserted no such claim, nor was it amended to assert such claim. We have held that a plaintiff may not raise a new theory of recovery for the first time in response to a defendant's motion for summary judgment, and that is exactly what Plaintiffs have attempted to do. *Blackburn v. Pre-Paid Legal*, 398 S.W.3d 630, 661 (Tenn. Ct. App. 2010) (citations and quotations omitted).

### Statute of Limitations

The statute of limitations started running when CNS changed from the Vacation Plan to the PTO policy on January 1, 2015. The three-year statute of limitations in Tennessee Code Annotated section 28-3-105 required claims to be filed by January 1, 2018. Original Plaintiffs filed their complaint on August 5, 2015, but voluntarily dismissed their complaint on November 7, 2017. Under the saving statute, original Plaintiffs had one year to refile their complaint, and Plaintiffs Michelhaugh and Williams met that deadline when they refiled the current complaint on April 11, 2018. Tennessee Code Annotated § 28-1-105(a). However, when Plaintiffs Gardner and Goins filed their claims on April 11, 2018, the statute of limitations had expired by over three months. Because their claims are time-barred, an issue before the trial court was whether Plaintiffs Gardner and Goins, and any putative class members, could establish that the statute of limitations had been tolled. Plaintiffs had the burden of proof as to this issue. *See Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012).

Plaintiffs argue that their claims were tolled by the saving statute and by the class action tolling doctrine. They assert that the trial court "failed to account for the fact that Plaintiffs' Rule 41.01 voluntary dismissal restarted the entire action, allowing Plaintiffs to seek certification of the putative class upon refiling." Plaintiffs also argue that the trial court reached an erroneous decision by relying on *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28 (Tenn. 2007). Despite these arguments, Plaintiffs failed to cite to any sources that address the current situation and instead relied on cases that are structurally different than the one at bar. Here, two Plaintiffs voluntarily dismissed a prior action and they, along with two new Plaintiffs, filed an action after the statute of limitations lapsed. For the reasons set forth below, we affirm the trial court's ruling and find that claims asserted by Plaintiffs Gardner and Goins, and any putative class members, are dismissed as untimely.

Rule 41.01 provides that, subject to some limitations, plaintiffs have a right to voluntarily dismiss their claims without prejudice. However, Rule 41.01 does not mention the ability to refile an action, and it does not determine the timeliness of a second action. Instead, the respective statute of limitations and the saving statute govern the plaintiffs' ability to *timely* refile the original claim. Rule 23.04 of the Tennessee Rules of Civil Procedure gives the trial court authority to establish a time for filing a class certification motion.[15] When a trial court sets a deadline for filing a motion for class certification–and the suit is voluntarily dismissed but later refiled–any tolling that applied from filing the prior action ceases if the plaintiffs fail to file their motion for class certification before the deadline. *Tigg*, 232 S.W.3d at 30.[16]

In this case, the *Michelhaugh I* scheduling order determines whether Plaintiffs' motion for class certification was timely. "The Plaintiffs shall file any motion for class certification as soon as practicable, but not later than 180 days before trial." Both parties agreed to the scheduling order, and Plaintiffs knew they were required to file their motion by September 22, 2017. Plaintiffs allowed that deadline to pass without moving for class certification and voluntarily dismissed their claims several weeks later. Plaintiffs failed to comply with the scheduling order, and they are bound by that result.

The claims of Plaintiffs Goins and Gardner–and other putative class members– cannot be saved by the federal class action tolling doctrine or the saving statute. The saving statute does not protect them because they were not named in *Michelhaugh I*. In general, a proposed but uncertified class action does not bind nonparties, and Plaintiffs do not cite any decision in which putative class members are considered plaintiffs for purposes of the saving statute. *Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011).

Furthermore, Tennessee has not adopted the federal class action tolling doctrine which allows members of a proposed but uncertified class to file individual lawsuits or intervene in the pending action within the statutory limitations period.[17] Even if Tennessee had adopted this doctrine, it could only be used to save the individual claims of Goins and Gardner. However, the Tennessee Supreme Court refrained from adopting the federal class action tolling doctrine in *Tigg*, stating, "Even if we were to adopt a class action tolling

---

[15]The trial court does not have a local rule on the motion for certification for class-action lawsuits. Instead, the court relies on scheduling orders to determine filing deadlines.

[16] In *Tigg*, the Tennessee Supreme Court determined that a previous purported class action filed by other replacement workers did not operate to toll the applicable statutes of limitations after the time for seeking class certification expired, and thus the later action was untimely. "We hold that the complaint filed by the previous plaintiffs, which purported to be a class action, did not operate to toll the statutes of limitations for the plaintiffs in this case after the time for seeking class certification expired."

[17]The federal class action tolling doctrine only applies to individual claims, and the Supreme Court held that class action tolling did not toll the time for filing class claims. *Tigg*, 232 S.W. 3d at 32; *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806 (2018).

doctrine, we would hold that the plaintiffs are barred by the statutes of limitations on their claims because the previous plaintiffs failed to protect the other potential members of the class." *Tigg*, 232 S.W.3d at 35.

It is undisputed that the current claims were filed after the three-year statute of limitations expired. It is also undisputed that original Plaintiffs did not move to certify the class in *Michelhaugh I*, and thereby failed to protect potential members of the class. Plaintiffs Gardner and Goins should have filed their individual claims within the original limitations period (by January 1, 2018), but they failed to do so. Therefore, the trial court properly determined that the three-year statute of limitations bars the claims of Plaintiffs Gardner and Goins and any claims a putative class member could assert.

## V. CONCLUSION

The judgment of the trial court is affirmed. The case is remanded for further proceedings as may be necessary. Costs of the appeal are assessed to the appellants, Richard Michelhaugh, John D. Williams, Jeff Gardner, and Monty Goins.

_____
JOHN W. MCCLARTY, JUDGE